GERTRUDE PENHANSKY, APPELLEE, V. DRAKE REALTY CONSTRUCTION COMPANY, APPELLANT.

FILED OCTOBER 20, 1922. No. 22116.

1. **Witnesses:** IMPEACHMENT. Where one has been misled or entrapped into calling a witness by reason of such witness, previous to the trial, having made statements to the party, or his counsel, favorable to the party's contention, and at variance with the testimony given at the trial, and the party believed and relied upon such statements in calling the witness, and is surprised by the testimony on a material point, he may, in the discretion of the court, be permitted to show the contradictory statements made before the trial.

2. **Trial:** INSTRUCTIONS: HARMLESS ERROR. A statement of the issues in an instruction, which is not precisely correct, may not always be prejudicial and require a reversal of the judgment.

3. ———: ———: CONSISTENCY. A cautionary and informative instruction with respect to expert witnesses and a general instruction that the jury are sole judges of the credibility of witnesses and may consider their relationship to the parties, their bias, or prejudice, if any has been shown, etc., are not inconsistent with each other.

4. ———: ———. The instruction set forth in the opinion *held* not to disparage the testimony of expert witnesses.

5. **Jury:** EXAMINATION. It is not improper to ascertain at the beginning of the trial and while the jury are being impaneled whether an insurance company is interested in the defense of an action for personal injuries, and whether any agent or officer of such corporation is upon the panel, so that the right of challenge may be understandingly exercised.

6. The rule as to contradiction of one's own witness announced in *Blackwell v. Wright*, 27 Neb. 269, *Masourides v. State*, 86 Neb. 105, and *Merkouras v. Chicago, B. & Q. R. Co.*, 101 Neb. 717, is set aside.

APPEAL from the district court for Douglas county: L. B. DAY, JUDGE.  *Affirmed.*

*Kelso A. Morgan* and *Livingston & Whitmore,* for appellant.

*McKenzie, Cox, Burton & Harris, contra.*

Heard before MORRISSEY, C. J., LETTON, DAY and ALDRICH, JJ., REDICK and SHEPHERD, District Judges.

LETTON, J.

As plaintiff, accompanied by another woman, was endeavoring to cross Twenty-fourth avenue near the intersection of Harney street in Omaha, a heavy motor truck belonging to defendant, and driven by one of its employees, came rapidly eastward on Harney street and turned south into Twenty-fourth avenue.  According to the testimony on behalf of plaintiff, they were about to cross the street to the Wise Memorial Hospital, which stood almost directly to the westward on the opposite corner; they stepped to the pavement and proceeded about four or five feet, when, becoming alarmed at the rapid approach of the truck, the two women turned, attempted to reach the sidewalk again, and were struck by the truck, at or about the curb line, and both were knocked down and injured.  Three wheels of the truck mounted the curb before it stopped, and the left rear fender struck and knocked part of the bark off a tree which stood in the parking space between the sidewalk and the curb, about 36 feet to the south of the intersection.

The testimony on behalf of defendant is practically to the same effect, except that the witnesses say that the two women had nearly reached the center of the street going west, and that the driver of the truck was endeavoring to pass behind them, when they ran back to the east curb, fell, and were struck.  This conflict in the evidence really furnishes the only material issue of fact in the case, and having been resolved by the jury, upon conflicting evidence, in favor of the contention of plaintiff, we must accept her version of the facts.

A number of assignments of error are made, some of

them very general in their nature. Those which we deem necessary to the proper disposition of the case may be summarized as follows: That the verdict is excessive; that the court erred in permitting a witness to testify that the driver of the truck, who had been called as a witness for plaintiff, had made contradictory statements to those to which he testified at the trial; error in instructions; and error in this, that plaintiff's attorney during the trial, in the presence of the jury, stated that the defendant's liability was carried by an insurance company, and questioned defendant's attorney as to whether such was not the fact, much to the prejudice of the defendant.

The first proposition of law relied upon by defendant is that a party may not contradict the testimony of his own witness by showing that the witness has, at another time and place, made statements contrary to the testimony given. Plaintiff was surprised and misled by the testimony of the driver of the truck, who was called by her, as to a very material fact. She was permitted to show by another witness that the driver had made directly contradictory statements to plaintiff's counsel, as to this, shortly before the trial. If we adhere to our former decisions on this point this would constitute error, though, considering all the evidence in the case, we think it would not have been prejudicial. But we are now convinced that the reasons for the rule are not sound. Where one has been misled or entrapped into calling a witness by reason of such witness, previous to the trial, having made statements to the party, or his counsel, favorable to the party's contention, and at variance with the testimony given at the trial, and the party believed and relied upon such statements in calling the witness, and is surprised by the testimony on a material point, he may, in the discretion of the court, be permitted to show the contradictory statements made before the trial. The proper limits of this opinion will not permit a statement of the arguments *pro* and *con*. They have often been stated since the opinion of Lord Denman in *Wright v. Beckett*, 1 Moody & Rob.

(Eng.) 414. In the last edition (1914) of Jones, Commentaries on Evidence, vol. 5, p. 241, it is said that the statement in 1 Greenleaf, Evidence, sec. 444, of the view now expressed, "is in accord with the weight of authority to-day founded both on statutes and the later decisions." Cases from 24 states are cited in support of this text. This more modern view is becoming increasingly adopted. The rule has been statutory in England since 1854, and has been changed in a few of the states in this country by statute. In an exhaustive examination of this rule, both historically and according to the reasons given for it in the cases made by Mr. Wigmore (2 Wigmore, Evidence, sec. 896 *et seq.*), it is very clearly demonstrated that the rule has no sound foundation in reason. Other cases are cited in the same sections of 5 Wigmore on Evidence. There is an interesting article on the topic in 11 Am. Law Rev. 261, where it is clearly shown that the reasons usually given are unsound, and that the rule is a mischievous one and cannot promote justice, while in many cases it might promote injustice. It is said in this connection that, if a witness "betrays the party who calls him, and falsifies in every statement which he makes, the opposite party will, of course, accept the treason, say nothing of impeachment, and leave the jury no alternative but to find an unjust verdict, upon evidence which both the parties know to be the rankest perjury. * * * Nobody can profit by the rule but the witness and the antagonist of the party who calls him, and they only by the defeat of the ends of justice. They may combine and defraud. In truth, the rule is a standing temptation to an unscrupulous party to tamper with his adversary's witness."

The new constitutional provisions (Const. art. V, sec. 25) expressly conferring upon the court the power to change rules of practice "not in conflict with laws governing such matters" (which we construe in this connection to mean "statutes governing such matters"), the rule as to the contradiction of witnesses stated in *Blackwell v. Wright,* 27 Neb. 269, *Masourides v. State,* 86 Neb. 105,

and *Merkouras v. Chicago, B. & Q. R. Co.,* 101 Neb. 717, is set aside and the foregoing adopted. There is practically unanimity of opinion that one may not impeach his own witness by character evidence, and we still adhere to this rule.

Complaint is made that the court, in an instruction, submitted to the jury an issue not warranted by the pleadings or the evidence. This complaint is based upon the fact that, while the petition alleged plaintiff had sustained a severe nervous shock, and that the shock had caused a severe and permanent injury to her eyesight, instruction No. 1, stating the issues, told the jury that "plaintiff complains particularly of injury to her head, ribs and other injuries, together with a severe nervous shock, and alleged these injuries are permanent." It will be seen that the allegation of the petition in this respect was not stated with precision, but a consideration of the whole record discloses that the jury could not have possibly been misled. The real issues were whether the defendant was liable for the accident, and the extent of plaintiff's injuries, and this the jury had to determine from the evidence. We think this slight error was not prejudicial.

Several medical men were examined as expert witnesses. The jury were instructed as follows:

"Certain witnesses have been called who testified as expert witnesses. You are not bound to take the statements of experts as binding upon you, but only to aid you in coming to a proper conclusion. Their testimony being received as that of persons who are learned by reason of extra investigation and study along lines not of general knowledge, and the conclusion of such persons being of value. You may adopt, or not, their conclusions according to your own best judgment, giving in each instance such weight as you think should be given under all the facts and circumstances of the case."

They were also given the usual instruction to the effect that the jury are the sole judges of the credibility of the witnesses and may consider their relationship to the

parties, bias or prejudice, *et cetera*. It is now urged that these instructions were ambiguous and in total conflict with one another. We are not of this opinion. It was entirely proper that the jury should consider the interest of the expert witnesses in the result of the suit, their relationship to the parties, their apparent fairness, or bias, if any of these conditions had been shown, and all the other evidence, facts and circumstances proved tending to corroborate or contradict such witnesses. Experts are as much subject to these human imperfections as other witnesses.

It is also complained that the instruction as to experts improperly singled out the testimony of these particular witnesses; that their testimony was disparaged by this instruction; and several cases are cited in which judgments were reversed because the juries were instructed that "expert evidence is of the very lowest order, and of the most unsatisfactory character," or other like disparaging remarks. This instruction given is merely informative and cautionary. It explains to the jury for what reason the conclusions or opinions of experts are received, and points out the distinction between the testimony of such witnesses and other witnesses whose testimony is received only as to facts, and not as to opinions or conclusions. 2 Jones, Commentaries on Evidence, secs. 391, 392; *Olson v. Manistique*, 110 Mich. 656; *Commonwealth v. Shults*, 221 Pa. St. 466.

The next complaint is that the verdict, which was for $5,000, is excessive. Plaintiff was in bed at the hospital continuously for 18 days. She had severe bruises upon her head; one rib was fractured; she suffered a severe nervous shock and was afflicted with dizziness and pains in her head continuously until the time of the trial. She complained of chilly sensations, and light seemed to affect her. The accident happened in August. She was compelled to return to the hospital in October. At that time she was very nervous, partly hysterical, suffered from severe headaches and chilly spells. A specialist in nervous

and mental diseases, who testified on behalf of the defendant, examined her about two weeks before the trial, and found pain in the region of the ribs on the left side; that there had been an injury to the front of her head above the eye; and he found her suffering from traumatic neurasthenia, which resulted from the accident. He testified that she should have suitable treatment in a hospital with proper baths, massage, nourishing diet, nerve tonics, and the removal of all worry and distress, and should have absolute rest, and estimated the cost of this and medical attendance at from $50 to $100 a week.

Another witness, who testified that he qualified as a physician and then developed into an eye specialist, testified that he examined the plaintiff's eyes, and the only trouble he found was that she was far-sighted; that this would have a tendency to cause head-aches; that another disturbance or shock might aggravate the condition already there; and that, if she had recovered from the shock incident to the accident, proper glasses would correct the condition, but he did not testify that she had so recovered.

The conclusion we draw from all the testimony with regard to the plaintiff's condition is that at the time of the trial she was still suffering from traumatic neurasthenia, and that the shock still affected her vision. She had recovered almost entirely from the bruises, contusions and fractured rib. In all probability by the aid of properly adjusted glasses her sight will become normal, and this will no doubt operate to relieve some of the headaches from which she suffers. It is impossible to tell from the evidence how long the dizziness will persist, or the other subjective symptoms, or when the neurasthenia will cease.

It is complained that the verdict is excessive. While we deem the verdict somewhat liberal, considering the pain and shock, the suffering in plaintiff's head, the care and expense of further treatment in a hospital which will be required for a complete recovery, according to defendant's own witnesses, the verdict is not so excessive as to justify the court in reducing it or setting it aside. The

trial judge deemed it not out of proportion to the injuries sustained, and he had the advantage of seeing the plaintiff and observing her condition.

As to the complaint that plaintiff's counsel was guilty of prejudicial misconduct in trying to ascertain whether an insurance company was interested in the case, human nature is such that, if an agent or representative of a liability insurance company were a member of the jury, and such a corporation were interested in the case, he might have such a bias that it would influence his verdict. It is not erroneous to permit an inquiry of this character to be made. *Egner v. Curtis, Towle & Paine Co.*, 96 Neb. 18. The affidavit used upon the motion for a new trial does not clearly and definitely show that the incident complained of did not occur during the impaneling of the jury. Also, it may be doubted whether the knowledge or suspicion that in many cases of this nature the defense is conducted by an insurance company is so foreign to the mind of jurors as appears to be thought.

To sum up, while we doubt the permanency of plaintiff's injuries, we think the verdict not unreasonable or excessive under all the facts.

AFFIRMED.