Otto A. Bergendahl, appellee, v. Henry Rabeler, appellant.

Filed July 14, 1936.   No. 29621.

539

*Moyer & Moyer, Baylor & Tou Velle* and *George Healey,* for appellant.

*Deutsch & Young* and *J. J. Harrington, contra.*

Heard before GOSS, C. J., ROSE and DAY, JJ., and ELDRED and TEWELL, District Judges.

TEWELL, District Judge.

This action was begun in the district court for Madison county by Otto A. Bergendahl, as the next friend of his daughter, Sonja Bergendahl, a minor of the age of 17 years, to recover damages arising from a collision between two automobiles. Henry Rabeler was the only defendant. Trial was had to a jury and resulted in a verdict and judgment in favor of the plaintiff for the sum of $7,500. The defendant appeals.

The pleadings and evidence disclose that Otto A. Bergen-

dahl had possession of a Chevrolet coach. He operated it for family purposes and was accustomed to taking his daughters Sonja, hereinafter called the plaintiff, and Lilly from the family home to the high school in Norfolk. On the morning of October 4, 1934, he was ill and secured one Kenneth Wehenkel, a boy 18 years of age, to take his daughters to school. Wehenkel returned to the high school that day at noon for the daughters. With the plaintiff riding in the back seat and Lilly, a girl 15 years of age, riding in the front seat with him, Wehenkel drove the Bergendahl car four blocks south on Fifth street to its intersection with Michigan avenue, where the collision involved occurred. Fifth street, which is 80 feet in width, extends from north to south and Michigan avenue, which is 66 feet in width, extends from west to east. The surface of Fifth street, at the time of the collision, was graveled. Michigan avenue, except at the intersection above mentioned, had no surface except one of dirt. The intersection was bounded by cross-walks on all sides except its north. Drainage ditches paralleled both sides of each street. The surfaced portion of Fifth street was about 32 feet wide and the usually traveled surface of Michigan avenue was about 22 feet wide. Private residences surrounded the intersection. The vicinity of the intersection was level and nothing existed to prevent the driver of an automobile approaching it from any direction at a distance of at least 20 feet therefrom from seeing another automobile approaching it from any other direction from at least 100 feet distance. A circular metal sign, 18 inches in diameter displaying the word "slow" painted in white, was mounted on a post stationed on the west edge of Fifth street at a point 54 feet north of the north boundary of the intersection. No other traffic control signs existed near the intersection. The weather was clear and the surface of the streets dry.

Just prior to the collision the defendant drove a Ford sedan eastward on Michigan avenue and upon the south half thereof. In the car with him were his wife and minor son. The evidence conflicts as to which of the two cars first

entered the intersection, and also conflicts upon the question of how fast each car was being driven. The brakes on the Bergendahl car were in such condition as not to be of much, if any, aid in stopping its forward motion. The evidence conclusively discloses that the first impact of one car with the other occurred by the tip of the right front fender of the Bergendahl car striking against the left side of the left front fender of the defendant's car, immediately above the left front wheel hub. The right front spring horn of the Bergendahl car struck the left front wheel hub of the defendant's car. The place of impact, as disclosed by the tracks of the two cars, was several feet south of the center of the intersection and near and probably east of the center line of Fifth street. Immediately prior to the collision the Bergendahl car, which had been driven southward near the center line of Fifth street, was swerved toward the southeast and its speed accelerated, and the defendant's car was swerved in the same direction and then turned toward the south and southwest. Just after the collision the defendant's car came to a stop at a place about 12 to 15 feet south of the south boundary of the intersection headed southwest, and the Bergendahl car was upset and lying upon its left side headed southward, and upon the cross-walk over the drainage ditch at the southeast corner of the intersection. By the upset of the Bergendahl car, the plaintiff was injured.

One assignment of error is based upon the fact that counsel for plaintiff upon the *voir dire* of jurors by the nature of his questions caused jurors, who later served as members of the jury, to believe that the defendant carried insurance against loss from damages such as plaintiff sought to recover. The record of the *voir dire* discloses that many questions were asked of each prospective juror relative to whether or not he was a stockholder in the State Farmers Mutual Insurance Company, of Bloomington, Illinois, or had a policy of insurance with that company, or had ever been an agent for that company. Some of the questions asked were as follows: "You wouldn't want

to give the defendant a verdict just because there is insurance?" "If selected as a juror could you try this case and decide it solely on the law and the evidence just as though the question of insurance was not involved?" "You would decide this case just as fairly and just as easily in your own mind with the question of insurance involved as you could if it wasn't in there?" Questions of like import as the above were asked throughout the *voir dire* examination. If a prospective juror disclosed that he then had, or had ever had, a policy of insurance upon his automobile, he was then usually asked if he had not paid for the insurance. At the time of the trial of this cause the rule of practice announced in *Jessup v. Davis*, 115 Neb. 1, 211 N. W. 190, to the effect that it was error prejudicial to the plaintiff in an action for damages to refuse to allow him on cross-examination to show whether or not the defendant was insured against loss on account of such damages was in effect. This rule was revoked by the opinion in *Fielding v. Publix Cars, Inc.*, 130 Neb. 576, 265 N. W. 726. By the express terms of that opinion, the revocation of such rule did not affect this case, as such revocation affected only cases tried more than 20 days after such opinion was filed. Prior to the date of the opinion in *Jessup v. Davis, supra,* this court held that it was proper for a plaintiff in an action such as this, if the defendant was insured against loss on account of damages for causing personal injury, when impaneling the jury, to interrogate each prospective juror relative to his relations with the company carrying the insurance. *Egner v. Curtis, Towle & Paine Co.*, 96 Neb. 18, 146 N. W. 1032, L. R. A. 1915A, 153; *Koran v. Cudahy Packing Co.*, 100 Neb. 693, 161 N. W. 245; *Penhansky v. Drake Realty Construction Co.*, 109 Neb. 120, 190 N. W. 265. In the opinion in *Fielding v. Publix Cars, Inc., supra,* is found the following statement: "The right of counsel to interrogate jurors on their *voir dire* examination in order to determine whether it is expedient to challenge any of them peremptorily, within proper limits, cannot be denied." Whether or not such an interrogation on *voir dire* as is

involved in this case, relative to insurance, was "within proper limits" was not involved in that case and not thereby decided. To say that such interrogation in this case was made to secure information for use in the exercise of challenges is not worthy of belief. To allow such an interrogation in all cases because it might in some cases have a legitimate use is to allow the unscrupulous and unethical to use it under a false guise for a purpose that no ethical lawyer would desire to attain. The pernicious, unethical purpose for which an unrestricted right to such an interrogation on *voir dire* may be used is such that restriction is necessary to an attainment of a proper consideration of issues in actions tried to juries. To deny such a right entirely would work far less perversion of proper verdicts than does its unrestricted use. Inquiry that is not suggestive of the existence of such insurance will all but always give sufficient information for use in making any kind of challenge. To inform the jury that the defendant does not carry such insurance against loss from paying a verdict such as is requested by the plaintiff has been held by this court to constitute error. *Taulborg v. Andresen,* 119 Neb. 273, 228 N. W. 528. To inform a jury that a defendant was not thusly insured, most persons would agree, would not have as strong an influence to prevent a verdict based only on the facts and rules applicable thereto as would information that such insurance existed. Courts of jurisdictions, other than our own, that allow an interrogation on the *voir dire* of jurors relative to the juror's relation to an insurance company condemn the use thereof for an improper purpose. 64 C. J. 234, and cases cited in footnotes, 35 to 43.

We feel that if such an interrogation is made at all, it should only be made when its legitimate purpose cannot be otherwise attained. We therefore hold that, upon the *voir dire* examination of jurors in a trial to a jury of an action for damages alleged to have arisen from negligence, counsel should scrupulously avoid any act, statement or

question of such a nature as will reasonably inform the jury as to whether or not the defendant is indemnified by one not a party to the action against having to pay any verdict the jury may render against him. A violation of such rule is error prejudicial to the party offended, unless the circumstances of the entire case affirmatively show lack of prejudice thereby or affirmatively show that such information was a necessary incident to securing information that is needed for use in making challenges and that reasonably could not otherwise be secured. To ask of the juror whether or not he is an agent of or stockholder in any corporation and, if he says he is either, to make inquiry of him as to the kind of corporation to which he bears such relation will usually give all information needed without use of the word "insurance." This method of inquiry was suggested in *Fielding v. Publix Cars, Inc., supra.* That case, however, did not involve any method or subject of inquiry upon *voir dire* of the jury.

Improper conduct of counsel for plaintiff during the introduction of evidence is assigned as error prejudicial to the defendant. To set forth all of the acts or statements of plaintiff's counsel of which complaint is made would unduly extend this opinion. We mention but a few. During the cross-examination of defendant's wife, a witness for the defendant, an objection was made by defendant's counsel to a question propounded by plaintiff's counsel. Immediately the following statement was made by counsel in the presence of the jury.

"I am not trying to reflect on Mrs. Rabeler's integrity in the least. In fact, she corroborates our witness to whom her husband stated he did not see the other car. All we want here is to get the facts to this jury and these insurance attorneys want to keep the facts out of this record."

Counsel for appellee repeatedly referred to the plaintiff as "the poor, unfortunate little girl." Several times during the introduction of evidence reference was made either to the plaintiff desiring to be "fair to the jury" or to the defendant's counsel being "unfair to the jury." Counsel

should not make declarations of fact during the introduction of evidence, further than is honestly useful for making a clear presentation of the evidence, and the making of such a declaration may be prejudicial error if the declaration made is of such a nature as reasonably to cause a prejudice against an opposing party or undue sympathy for the party in whose behalf it is made. *Splittgerber Bros. v. Skinner Packing Co.,* 119 Neb. 259, 228 N. W. 531. The declarations of counsel above mentioned had no legitimate use. Under the circumstances shown in the record, they cannot be said not to have been prejudicial to the defendant.

Complaint is made by the defendant of remarks of counsel for plaintiff in his closing argument to the jury. In that argument counsel for plaintiff said in part: "I don't want to punish the defendant. A verdict for this girl will not punish him." This statement, when considered with prior questions and statement of counsel relative to insurance, could only be construed by the jury as an assurance that some insurance company would pay the amount of the verdict. In its opinion in the case of *Standridge v. Martin,* 203 Ala. 486, 84 So. 266, the supreme court said, in part:

"There can scarcely be made to a jury a more seductive and insidious suggestion than that a verdict for damages against the defendant before them will be visited, not upon that defendant, but upon some invisible corporation whose business it is to stand for and pay such damages. Such a suggestion, once lodged in the minds of the jury, is almost certain to stick in their consciousness, and to have its effect upon their verdict, regardless of any theoretical exclusion of it by the trial judge."

We approve of the thought expressed in this quotation. In the trial of a cause to a jury counsel should not in any portion of the proceeding state his conclusions as to what may be the result of the jury's verdict, as distinguished from what verdict should be found when the rules involved are applied to the facts of the cause. A violation of this rule may be prejudicial error. We regard the statement of

counsel last above quoted as being prejudicial to defendant under the circumstances shown in the record.

Assignments of error made by the defendant include error predicated upon the fact that the court failed to properly instruct the jury relative to the doctrine of concurrent negligence. By instruction No. 12 the court told the jury that it was not necessary for the plaintiff to prove that the negligence of the defendant was the sole proximate cause of her injuries, and that if independent acts of two persons combined to produce her injury each was responsible for the entire result. This instruction failed to confine any negligence of the defendant to the specific allegations of negligence that might be used as a basis of his liability. It also failed to inform the jury that, before the defendant could be held liable upon the doctrine of concurrent negligence, the evidence must show that the injury would not have occurred but for such negligence of the defendant. The acts and omissions of the driver of the Bergendahl car were independent and self-operating forces, disconnected from the acts and omissions of the defendant and, logically, alone may have caused plaintiff's injury. Under such circumstances the defendant would not be liable, even though negligent in a manner alleged and proved. The rule of law relating to two or more independent forces concurring to form the proximate cause of a given result presupposes two forces, each self-operating, and coming from two independent and disconnected sources. It applies only when such result would not have occurred except for the existence of both of such forces. *Steenbock v. Omaha Country Club*, 110 Neb. 794, 195 N. W. 117; *Johnson v. Mallory*, 123 Neb. 706, 243 N. W. 872. The instructions of the court failed to properly inform the jury relative to the doctrine of concurrent negligence, and to make clear the conditions required for its applicability to the evidence. This task was begun by instruction No. 12 but never completed.

The defendant complains of the trial court having refused to admit certain evidence tending to show that plaintiff had such a control over the driver of the Bergendahl car as to

cause his negligence to be imputed to her, and of the court having failed to submit to the jury under proper instructions the question of whether or not the negligence of such driver was imputed to the plaintiff. We treat all assignments relating to these matters together. We state, for the purposes of this case, that Wehenkel, the driver of the Bergendahl car, was under the facts above outlined guilty as a matter of law of negligence that formed a part or all of the proximate cause of plaintiff's injuries to such an extent as to prohibit a recovery, on account of the facts of this case, by him or by any one to whom his negligence was imputed. *Nelson v. Plautz,* 130 Neb. 641, 265 N. W. 885. Such statement is not necessary to a decision in this case, but should materially simplify the issues in the retrial of this case upon the issue of imputed negligence, as well as upon that of contributory negligence of the plaintiff, and upon that of concurrent negligence of the defendant. A minor of normal mind of the age of 17 years, who is a passenger in an automobile, is one to whom the negligence of the driver of such automobile may be imputed, regardless of whether or not such minor was negligent, and competent evidence tending to show the right of such minor to control where and how such automobile should be driven is admissible to impute the negligence of such driver to such minor. The failure of the trial court to receive evidence showing such right of control in plaintiff, and to submit to the jury the issue of whether or not the negligence of Wehenkel was imputed to the plaintiff, in case the court could not say as a matter of law that it was imputed, was prejudicial to the rights of defendant. If imputed as a matter of law, then the plaintiff cannot recover, regardless of how negligent the defendant may have been or how free from negligence the plaintiff may have been. By instruction No. 13 the court practically withdrew the issue of imputed negligence from the jury.

Many assignments of error not mentioned above are made by the defendant. What has heretofore been said may aid in preventing a recurrence of many of the conditions of the

° record of which the defendant complains. Without any holding one way or the other upon some of such conditions, we mention a few of them in order to aid in preventing their recurrence. One of the allegations of negligence against defendant is that he drove his car without its brakes being in proper condition, and such alleged act was submitted as a possible act of actionable negligence when no evidence whatever supported such allegation.

The instructions tell the jury that contributory negligence of the plaintiff does not bar her recovery in case the jury found it slight and that of the defendant gross in comparison, but they do not tell the jury that such negligence of the plaintiff otherwise would bar her recovery, except to say that the jury's verdict should be for the defendant if the contributory negligence of the plaintiff was more than slight. What should be done if any contributory negligence of plaintiff existed and the negligence of the defendant was less than gross in comparison is not stated. While instruction No. 10 sets forth the issues upon which the burden of proof is upon the plaintiff, nowhere do the instructions set forth the conditions required for a finding for the plaintiff. Except for the one instance above mentioned, the instructions do not set forth any condition under which the jury should find for the defendant.

On account of errors prejudicial to defendant above discussed, the judgment of the trial court is reversed and this cause remanded.

REVERSED.