# Helton v. Prater's Adm'r.

(Decided March 15, 1938.)

RUFUS LISLE and HUNT & BUSH for appellant.
NICKELL & NICKELL for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The administrator of the estate of John Henry Prater, deceased, recovered a judgment against Buford Helton for $12,000 in an action which grew out of an automobile accident in which Prater, a boy 14 years of age, was killed, while riding in a truck owned by Helton and driven by Talmage Lacy.

The accident occurred on Sunday, July 19, 1936, in Morgan county near the Wolfe county line on a state highway which leads from a point in Wolfe county through Hazel Green and Daysboro in Wolfe county, and Adele and Cannel City in Morgan county, to a point two miles from West Liberty, where it intersects state highway No. 40. The road was new and was covered with loose limestone rock. It was alleged in the petition, in substance, that Buford Helton was the owner of the truck which was being operated in his business at the time of the accident, and that he, his agent, servant, and employee, so negligently and carelessly operated it that it turned over and killed John Henry Prater, who was a passenger thereon at the invitation and with the knowledge and consent of the defendant and his agent, servant, and employee in charge of said truck. In an amended petition, it was alleged:

"That at the time of the injuries received by plaintiff's intestate, John Henry Prater, set out in the original petition, the defendant and one Tal-

mage Lacy, who was then in charge of, and was driving said automobile truck, were partners, and were then engaged in the business of buying, selling and hauling live stock, farm and other products, and that they were so using said automobile truck at said time in carrying on and conducting said partnership hauling and business.''

Buford Helton, a young man 23 years old, lived at Daysboro in Wolfe county. Talmage Lacy, who was also 23 years old, lived just across the line in Morgan county near the town of Adele, about 3½ miles east of Helton's home. Helton was engaged in the trucking business, and about a month before the accident purchased a new Chevrolet ½-ton truck which Lacy drove as Helton's employee. The truck was equipped with a bed and a frame, or ''cattle rack,'' for hauling commodities and livestock. After the administrator, who was the father of the deceased, testified, the defendant Helton was called by the plaintiff for cross-examination, and he proved to be the plaintiff's principal and most effective witness. He testified that he went to the home of Henry Lacy, father of Talmage Lacy, on Friday evening before the accident, and, on that occasion, entered into a partnership agreement with Talmage Lacy to engage in the trucking business; he to furnish the truck and Lacy to furnish the oil and gas. They were to divide the profits and share the losses. On the following day they went to Winchester and purchased a load of watermelons, and hauled them to Cannel City in Morgan county, where they sold them. On Saturday evening he and Lacy started from Lacy's home in the truck to Cannel City to attend a dance. They overtook the Prater boy on the road, who was walking to Cannel City to visit his uncle. Helton stopped and invited him to ride, and when he let him out at Cannel City told him that he would pick him up the next day and bring him back if he was on the road. Helton spent Saturday night at Talmage Lacy's home. Lacy told Helton that his relative, ''little'' Henry Lacy, who lived at Adele, had a cow for sale, and Helton told him that he would go to Adele the next morning and look at the cow. Helton remained in bed on Sunday morning, and, when Lacy told him that he would go to Adele and look at the cow, Helton said: ''Just go ahead, and if you can buy her, buy her.'' He testified that at the same time he told Lacy that if he saw John Henry Prater to pick him up and bring him

back. Several of Lacy's sisters rode with him in the truck to Adele, where they got out to attend church services. Just before he reached Adele, he saw John Henry Prater and several other boys on the roadside. He stopped and they got on the truck. Soon after the girls got out of the truck at the church, Lacy started back to his home where he had left Helton. In the truck were eight boys; two of whom were sitting on the driver's seat with Lacy. Six of the boys, including the deceased, John Henry Prater, were sitting or standing in the bed of the truck. The accident occurred a short distance from Lacy's home, but after the truck had passed John Henry Prater's home. Just before the accident occurred, the truck passed Ernest Robinson, who was walking, and his wife, who was riding horseback, both of whom were on the right side of the road and going in the same direction in which the truck was traveling. There is proof that the truck was traveling at a speed of about 40 miles an hour. As Lacy passed Robinson, he turned slightly to the left, and, according to his testimony, the car began to weave, one wheel locked, and it turned over. He testified that he removed his foot from the accelerator as he approached the Robinsons, and that he had reduced the speed of the car to about 35 miles an hour when the accident happened.

Appellant seeks a reversal of the judgment because of misconduct of plaintiff's counsel in persistently injecting into the case the question of insurance, and because the court erred in giving and refusing instructions.

In the voir dire examination of the prospective jurors, plaintiff's counsel asked the following question:

"Gentlemen of the jury, are any of you at the present time employed by, or interested in, or have any policy of insurance in, or stockholder in, the State Farm Mutual Automobile Insurance Company of Bloomington, Illinois, whose business is to insure automobiles against personal injury by the owner?"

The defendant objected, and thereupon plaintiff's counsel avowed that the defendant Helton, at the time of the accident, had an insurance policy in the State Farm Mutual Automobile Insurance Company of Bloomington, Ill.; that the company was conducting

Helton's defense in the case; and that he, in good faith, believed there were jurors on the panel who had insurance policies of the same character in the company; that the company was a mutual insurance company; and all policyholders had a right to vote at stockholders' meetings. The court overruled defendant's objection, and permitted the question to be propounded to the jury. The defendant then moved the court to discharge the jury and continue the case, but his motion was overruled.

In his closing argument to the jury, plaintiff's attorney made this statement:

"I have been driving a car for years, when I do a man an injury I expect to pay for it. I get insurance on my car, and when I get insurance and injure anybody, I expect my insurance company to pay for it."

It is insisted by appellant that the conduct of plaintiff's counsel in the voir dire examination and his closing argument was highly improper, and calculated to prejudice the minds of the jurors. We have consistently held, in cases of this kind, that it is improper for counsel to make any reference to the fact that the defendant carries liability insurance or to make statements necessarily carrying the inference that such is the fact. In a number of cases, some of which are cited and relied upon by appellee, we have held that the reference to insurance, though improper, was not prejudicial under the facts of the particular case. As a rule, the negligence of the defendant was clearly proved, and the smallness of the verdict indicated that the improper conduct relied upon for a reversal was without prejudice or adverse influence. Here, a verdict for a substantial sum was returned where the question of liability was a close one. If the conduct complained of was improper, it cannot be said it was not prejudicial. In Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715, 717, the rule was thus stated:

"Counsel, when interrogating jurors or witnesses concerning indemnity insurance, is subject to the rule that it must be done in the utmost good faith to protect some right of his client, and must be relevant to the issue made by the pleadings. Then he does so at the peril and at the cost of his client, if

his so doing does not clearly appear to be in absolute good faith."

In Gayheart v. Smith, 240 Ky. 596, 42 S. W. (2d) 877, 880, it was said:

"We have repeatedly announced the rule to be that it is error to permit testimony to the effect that the defendant in such an action for damages was at the time of the transaction under investigation protected by indemnity insurance, and that it was a mistake on the part of counsel for a plaintiff, when not acting in good faith, to interrogate prospective jurors, or witnesses, in the case for the purpose of bringing such fact to the attention of the jury."

Exhaustive annotations on the subject may be found in 95 A. L. R. 388, and 105 A. L. R. 1319.

The rights of the plaintiff in a personal injury or death action to interrogate prospective jurors on voir dire as to their connection with or interest in liability insurance companies rest entirely upon the good faith of the interrogator, and whether or not he is acting in good faith in the particular case is largely a matter within the discretion of the trial judge. Abell v. Whitehead, 266 Ky. 764, 99 S. W. (2d) 770; Hoagland v. Dolan, 259 Ky. 1, 81 S. W. (2d) 869. If he has reasonable grounds to believe that the defendant had liability insurance and that one or more of the jurors is an officer, agent, or employee of the company furnishing the insurance, or has a financial interest in the company, he may interrogate the prospective jurors as to such connection or interest; but, if his interrogation is merely an adroit effort to get before the jury the fact that the defendant carried insurance, it should not be permitted. We seriously question the sufficiency of the showing made by plaintiff's attorney to show his good faith and to authorize the interrogation of the jurors on the question of insurance, but when, in his closing argument to the jury, he made the uncalled-for and unnecessary statement concerning insurance, the real purpose of the voir dire examination was disclosed. The illustration given in his closing argument was clearly intended to and could have had no other effect than to inform the jury that the defendant carried insurance, and that an insurance company and not the defendant

would pay any judgment that might be rendered. It is true that an objection to this statement was sustained, but this did not remove the prejudice caused by such argument under the circumstances. The defendant moved to discharge the jury and continue the case, and his motion should have been sustained. On another trial, all references to insurance should be scrupulously kept from the jury, and interrogation of prospective jurors on voir dire concerning insurance should not be permitted unless a satisfactory showing is made that one or more of the jurors may be connected with or interested in the company in which the defendant was insured, thus furnishing some reasonable basis for the interrogator's claim of good faith.

"In the armory of the law, the privilege of counsel to interrogate jurors on their voir dire is a shield and not a dagger—a shield to protect a client and not a dagger to stab his opponent. Counsel must not mistake his weapon." Adams v. Cline Ice Cream Company, 101 W. Va. 35, 131 S. E. 867, 868.

As was said in Blue Bar Taxicab & Transfer Company v. Hudspeth, 25 Ariz. 287, 216 P. 246, 249, where evidence of insurance was injected into the case:

"The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation."'

The foregoing applies equally to subtle efforts of counsel to inject the question of insurance into the case in the voir dire examination and the closing argument. Usually, a method of inquiry can be adopted which will elicit the information sought without conveying to the jury the information that the defendant carried insurance. Bergendahl v. Rabeler, 131 Neb. 538, 268 N. W. 459; Walker v. Crosen, Va., 191 S. E. 753; Holman v. Cole, 242 Mich. 402, 218 N. W. 795; Safeway Cab Service Company v. Minor, 180 Okl. 448, 70 P. (2d) 76.

The defendant offered an instruction which told the jury to find for him if they believed from the evidence

that the wheel on the truck locked and because thereof the truck was overturned, and John Henry Prater killed. The court refused to give such an instruction. The plaintiff's own witness, Talmage Lacy, driver of the truck, testified that one wheel locked and the truck immediately turned over. He had not applied the brakes suddenly or with sufficient force to lock the wheel. He also stated that but for the locking of the wheel he would have kept the truck under control and prevented it from turning over.

One who invites another to ride in his automobile is not bound to furnish a vehicle free from defects, and, unless he knows it is defective and therefore unsafe, he will not be liable for injuries received by the guest in an accident caused by a defect in the automobile and not by its negligent operation. Beard v. Klusmeier, 158 Ky. 153, 164 S. W. 319, 50 L. R. A., N. S., 1100, Ann. Cas. 1915D, 342. Under the facts in this case, the court, in substance, should have instructed the jury to find for the defendant if they believed from all the evidence that the accident resulted from some defect in the truck, causing one of the wheels to lock and the truck to turn over, if they further believed from the evidence that such defect, if any, was unknown to the defendant. Schilling v. Heringer, 252 Ky. 624, 67 S. W. (2d) 979.

The appellant criticizes instruction No. 1 because it failed to submit the question of partnership in any form. This instruction merely imposed liability upon the defendant if John Henry Prater was on the truck at his invitation or with his consent or knowledge. The plaintiff might complain of the failure of the court to submit the question of partnership, but not the defendant. The plaintiff alleged and introduced some proof to show that the defendant and Talmage Lacy, the driver of the truck, were partners, and that the truck was being used in the partnership business at the time of the accident. He also alleged and introduced proof to the effect that Prater was on the truck at the time of the accident at defendant's invitation. In either event, the defendant Helton would be liable to plaintiff if Prater's death was caused by the negligent operation of the truck by Lacy. The jury might have believed that Helton and Lacy were partners, and that the truck was being operated by one of the partners in the partnership business at the time of the accident; but not that

Prater was on the truck at the invitation or with the consent or knowledge of the defendant. An instruction on the question of partnership would merely furnish another ground for returning a verdict for the plaintiff.

In the closing argument to the jury, the plaintiff's counsel stated:

"They never had a witness they offered. They didn't have a witness in this court house, and this is about the first time in my life in which the defendant didn't even have a witness. I called him because I felt he would tell the truth about it, and he did."

The unexplained failure of a party to introduce an available witness who presumably possesses knowledge bearing on the issues involved is a fit subject for fair comment. Monohan v. Grayson Supply Company, 245 Ky. 781, 54 S. W. (2d) 311. In the present case, the plaintiff introduced as witnesses the defendant, the driver of the truck, several of the boys who were in the truck at the time of the accident, and Robinson, who was walking along the road and was an eyewitness. There is nothing in the record to indicate that a witness possessing knowledge of any material facts not proven was not introduced. Talmage Lacy, the driver of the truck, is the nephew of Rawleigh Prater, the plaintiff, and a first cousin of the deceased. He and the defendant Helton are also related. Both Helton and Lacy were more than willing witnesses for the plaintiff. Under the circumstances, comment on the defendant's failure to introduce a witness was improper. As the case was tried, the insurance company was the real defendant, and it was in the hands of the Philistines.

For the reasons indicated, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.