## Star Furniture Co. et al. v. Holland.

(Decided May 20, 1938.)

MERVIN K. EBLEN, WM. M. BULLITT and EUGENE B. COCHRAN for appellants.

J. MOTT McDANIEL, G. C. ALLEN, KASH WILLIAMS and RICHARD P. DIETZMAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and one of the defendants below, Star Furniture Company, is and was at the times here involved a corporation with headquarters in Hazard, Ky. Among other corporate functions it was authorized to and it did operate a freight truck with which it transported freight for customers from one point to another. It had in its employ as chauffeur of the truck the other appellant and defendant below, Forest Warfield. The appellee and plaintiff below, Monroe Holland, at and sometime prior to October 22, 1933, lived at Allais, a mining village in Perry county, Ky. He de-

termined to remove his residence to Athol, a village in Lee county, Ky. Pursuant thereto he arranged with the corporate defendant to transport his household goods in its truck from his former residence to his contemplated new one over the intervening highways along the route. The best and most suitable route between the two points was some three or four times longer than an air line between them, and traversed portions of three or four counties in the eastern part of the state. One of them was Breathitt and another was Wolfe.

The moving trip was made on Sunday, October 22, 1933, in the early part of which day plaintiff's furniture was loaded into the corporate defendants' truck by himself and Warfield. Plaintiff desired and asked that he be permitted to go along with and ride upon the freight truck and Warfield as its driver consented thereto. However, the latter informed him that his (driver's) wife, and a young girl living with them, also intended making the trip and that those two would occupy the seat of the truck with the driver and plaintiff agreed to and did undertake the trip by riding on top of the load. Defendants' witnesses, consisting of Warfield, his wife, and the servant girl, testified that plaintiff was considerably intoxicated, especially so after the trip began. He gave one drink, according to the testimony, to the driver, during the loading and before the trip commenced. The parties started on the journey with plaintiff and a brother of Warfield riding on top of the furniture; but not long after the start was made plaintiff began clamoring for more liquor—having exhausted his supply. At some point on Troublesome creek in Perry county the parties stopped at a roadhouse where liquor was dispensed, and some if not all of the occupants disembarked, although it is not clear whether the lady travelers did so or not. While so disembarked Warfield testified that he, at the earnest solicitation of plaintiff, procured additional liquor, giving a pint of it to plaintiff. They continued the journey, and while ascending a mountain separating Breathitt county from Wolfe county—the line being near the top—plaintiff and Warfield's brother fell off the truck on to the surface of the highway, with plaintiff on the bottom, and whereby he sustained the personal injuries to recover damages for which he filed this action in the Wolfe circuit court against the cor-

porate defendant and its driver, measuring the amount at the sum of $50,000.

The negligence forming the basis of the action, as set out in the petition, is thus charged: "Defendant through its carelessness and gross negligence so operated the said truck that it crashed on said road and in great violence and force threw him on and against said furniture and said furniture on and against him; * * * that at the said time and as a part of the negligence herein complained of his household goods were in gross negligence so loaded on said truck that it helped to and assisted in causing the injuries hereinabove set out." Also, that, "contrary to the law of the State of Kentucky and in wilful, and intentional violation of the laws of said state the defendant driver, Forest Warfield, did unlawfully, feloniously and maliciously operate and drive said truck while drunk and intoxicated and that said violation of the law on the part of said driver who was the agent of the corporate co-defendant, caused, contributed to and concurred in causing the injuries herein set out."

Defendants demurred specially to the petition, challenging the venue of the action because neither party litigant resided in Wolfe county, nor did—as it contended—the accident happen in that county, nor was either defendant served in that county, the action having been filed on August 27, 1934, ten months after the accident. Defendants, without waiving their special demurrer, filed answer, in the first paragraph of which they pleaded in abatement the same facts relied on in support of their special demurrer. In a second one they controverted the material averments of the petition. In a third one they pleaded a written compromise settlement duly signed by plaintiff evidencing a payment to him of $120.50, which was entered into on December 21, 1933, in complete settlement and discharge of all liability for any damage accruing to him, and in a fourth and final one they relied on plaintiff's contributory negligence.

The court did not pass on the special demurrer of defendants to the petition, but, upon final submission of the cause to the jury, it gave to it instruction No. 3, saying: "If you shall believe from the evidence that the injuries complained of were sustained by the plaintiff while in Breathitt county, then you will find for the defendants." Five other instructions were given to the

jury, after the motion of defendants for a directed verdict in their favor was overruled, and a verdict was returned in favor of plaintiff for $4,925. Defendants' motion for a new trial was overruled with exceptions, and from the judgment pronounced on the verdict they prosecute this appeal.

In brief of their counsel filed in this court defendants rely upon four grounds for a reversal of the judgment, which are: (1) Assumption of risk by plaintiff when he undertook to ride on top of the truck load of furniture; (2) failure to prove any negligence on the part of defendants; (3) the settlement made with plaintiff; and (4) improper and prejudicial ejection into the case that the corporate defendant carried indemnity insurance. Before making further reference to them, or determining any of them in the order named, it may be stated that the evidence on the issue of venue—both direct and circumstantial—largely preponderated in favor of defendants' contention that the accident happened and the injuries were sustained in Breathitt county instead of in Wolfe county; but, since that question appears to have been abandoned so far as this particular appeal is concerned, we will devote no time to its discussion, but pass it without prejudice to a consideration of the other grounds classified and argued in appellants' brief.

While ground (1) is classified in brief as above indicated, the argument made therein also discusses and urges the defense of contributory negligence, since the three witnesses for defendants, supra, testified that in traveling along the highway while the trip was being made—and especially after the procuring of a supplementary supply of liquor—plaintiff became much more intoxicated and rode principally on top of the cab of the truck, which was a declining surface, and is some four feet or five feet wide and about six feet long, and that while so riding he was frequently bending over the edge of the roof of the cab teasing the driver and possibly one of the female occupants of the same seat and that he would occasionally alight therefrom and ride on the running board a part of the time and that he was otherwise engaged in hazardous conduct. They stated that his fall from the truck occurred while it was traveling up the mountainside in Breathitt county just before reaching the crest of the mountain which formed the line between Breathitt and Wolfe counties. No one

but plaintiff contradicted that testimony, both as to how the accident happened, and as to the place where it occurred. He testified as to how he sustained his injuries, thus: "I remember going through Campton and out here about a mile and a half and there was a big crash and all those things, boxes and furniture went toppling on me and I don't remember anything else." Note the similarity of his language in describing how the accident occurred with that employed by the attorney who drafted the petition. The "crash" employed by each of them conveys no charge of negligent conduct or omission of duty on the part of defendants.

Plaintiff later again emphasized the fact that the accident occurred after the truck had passed through Campton, which, if true, located its happening in Wolfe county; but that testimony was contradicted by every other witness in the case, consisting of eight or ten or possibly more, including, of course, Warfield, his wife, and their servant girl. Many of them said that the truck drove into Campton carrying plaintiff in his injured condition and traveling the road between the Breathitt county line and Campton. The physician who dressed plaintiff's wounds corroborated the same fact. An operator of a garage and of a gasoline station did likewise, as well as a number of other witnesses who resided in Campton who gave the same testimony. However, no opinion will be advanced by us on that issue, since it relates exclusively to the question of venue, which, as we have seen, is not argued by counsel in their brief.

Nowhere else in plaintiff's testimony, as above related, did he attempt to state or in any manner divulge any act of negligence on the part of defendants, except (a) his contention that Warfield was, to some extent at least, intoxicated, and (b) an *intimation* that at the time of the accident the truck was being driven at an excessive rate of speed. But his evidence as to that fact—in answer to the direct question as to the rate of speed that the truck was traveling at the time was: "It seemed to me like forty or forty five miles." "Q. I asked you about what rate of speed he was making? A. It was pretty fast." He also failed to qualify himself so as to make him a competent witness to testify upon that issue. But, waiving the question of qualification, it will be perceived that his testimony upon that point fell far short of establishing any definite speed, either permissi-

ble or nonpermissible. On the other hand, defendants' witnesses, including Warfield, testified that the truck was climbing up the side of the mountain (and plaintiff testified that it was ascending some hill) and that its speed was not exceeding eight or ten miles per hour, and the ascending road up the mountainside is a potent fact corroborating the estimated speed given by defendants' witnesses, whose testimony was positive and not couched in vague and uncertain language as plaintiff employed in giving his testimony on that issue.

There was absolutely no testimony in support of the charge of negligence in loading the furniture as charged in the petition, even if it should be considered as a material fact, nor is there any testimony in the case to show that any intoxicated condition of Warfield, if he was intoxicated, brought about the complained of "crash" testified to by plaintiff. Neither he nor any witness in the case gave any testimony in support of a collision of the truck with any object whatever, either in the road or out of it, nor did it run off the road into a ditch. It is true that some two or more witnesses residing at some point on the road testified that they later saw at one point thereon an indication that possibly a motor vehicle had run against some object at the side of the road, but that place was in front of a garage, around and about which was much rubbish, including parts of abandoned automobiles and in territory where service needing automobiles would be parked. None of them pretended to say that the indications they testified to were produced by the alleged guilty truck in this case. So that, the only testimony offered by plaintiff as to how he sustained his injuries is so indefinite as to render the manner of its happening in complete obscurity and to be solved only by pure surmise and speculation, if defendants' proof is discarded.

Plaintiff denied signing the written compromise, but a number of witnesses who were present when he signed it stated that he did so and that it was drawn in his presence and that he was perfectly familiar with all of its contents. They further testified—and he so admitted—that contemporaneous with his signing it there was delivered to him a check for $75, which, with his hospital bill of $45.50 that defendants agreed to pay as a part of the compromise (and which they did pay), made the full amount of $120.50. But he stated that he

signed no compromise, nor did he agree to one, yet he did accept the $75 with the agreement that his hospital bill would also be paid by defendants, and all of which was done—not in compromise of any right of action that he might have against them—but only as an emergency contribution to his support while he was recovering from his injuries so that he could resume his labor. In assuming that position plaintiff not only sought to avoid the legal effect of the alleged compromise as a bar to the maintenance of this action, but he likewise sought to avoid the necessity of returning the amount paid, or tendering it to the corporate defendant as a condition precedent to the maintenance of the action.

From the foregoing recitations it is somewhat difficult to escape the conclusion that, perhaps, grounds (1), (2), and (3), supra, should be sustained, or at least that the finding of the jury contrary thereto was flagrantly against the evidence so as to authorize a reversal of the judgment, and which is particularly true with reference to grounds (2) and (3). However, it is not essential that we should determine those questions finally and outright on this appeal, since there can be no doubt of the sufficiency of ground (4), supra, to authorize a reversal of the judgment, and for which reasons grounds (1), (2), and (3) are reserved so as not to prejudice the right of defendants to insist thereon at another trial if one should be had and so as not to foreclose their right to do so by this opinion.

The facts with reference to ground (4) are—that the draftsman of the petition expressly incorporated therein that as a special inducement for entering into the contract of carriage defendants "agreed that they were operating under a policy of insurance that they would pay him for any loss or damage to *himself* or *his goods, or either,* should any occur in transit." (Our italics.) In the opening statement to the jury plaintiff's counsel said that his client, "would prove that the Star Furniture Company represented to plaintiff that if his property, his furniture got hurt or damaged, that they had insurance to pay him well." Defendants objected thereto, but the court overruled it and defendants excepted and then moved to set aside the swearing of the jury and continue the case, but which motion was also overruled and to which they excepted. Plaintiff in later giving his testimony said that Mr. Combs (the

president of the corporate defendant) said to him at the time: "I will tell you our truck is in good condition and we are under good insurance and if anything should happen. * * *," At that juncture defendants objected and their objections were sustained with an admonition from the court not to consider that statement. It would be difficult—even beyond the power of overcoming—to conclude that such reference to the question of insurance did not have the desired effect to give the case an "insurance" coating, and to sprinkle it with an "insurance," perfume—all of which we have said in numerous cases was calculated to influence the jury in arriving at its verdict, both upon the issue of culpable negligence, as well as the amount of remuneration.

Whether such reference is calculated to influence jurors possessing stern and discriminating dispositions —and for which reason they should not be considered as erroneous—does not furnish the rule that has been adopted and applied in such circumstances. On the contrary, we, as well as all courts, have held that the average juror is either unconsciously or otherwise influenced by the fact that the alleged negligent actor carries insurance. Such average juror, it has been found, is frequently led astray and returns an unauthorized verdict because he concludes that the defendant against whom it is rendered will not be required to pay it out of his individual funds because of indemnity insurance carried by him. Knowing that fact counsel representing injured plaintiffs frequently seek to get before the jury the fact of such indemnity insurance being carried by the defendant in such tort actions, and we, as well as other courts, have never failed to condemn it. In a few cases we declined to reverse the judgment for such practices, but in each instance where we did so there were qualifying facts furnishing a legal excuse for the interjection of the insurance issue complained of. In all other cases we have not hesitated to reverse the judgment containing the error, in the absence of the record showing a legitimate excuse therefor. Among the later cases where such reversals were ordered are, Danville Light, Power, etc., Company v. Baldwin, 178 Ky. 184, 198 S. W. 713; Trevillian v. Boswell, 241 Ky 237, 43 S. W. (2d) 715; Breslin v. Blair, 249 Ky 178, 60 S. W. (2d) 337, and Helton v. Prater's Adm'r, 272 Ky. 574, 114 S W. (2d) 1120. Others will be found in those opinions. In the last (Helton) case

we approved and copied from the case of Blue Bar Taxicab & Transfer Company v. Hudspeth, 25 Ariz. 287, 216 P. 246, this excerpt (page 1124): "The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violotion." We do not think it needs enlargement at our hands at this time.

But it is insisted that the offending statement of counsel, made at the beginning of the trial in this case, was confined to informing the jury that defendants carried insurance against damage or injury *to property* and did not disclose to the jury any such indemnity insurance as being carried against injury *to persons*. Therefore, it is argued by counsel that the statement should not be given the condemnatory or penalizing effect attributed to it by us in the cited cases. However, in making that argument counsel overlooked that the statement made by the plaintiff himself in giving his testimony—which was of course following the statement made by counsel—did not so confine the indemnity insurance, nor did plaintiff in his petition so confine it. On the contrary, it is expressly averred therein that the alleged insurance carried by the defendant covered any loss or damage that might be sustained by plaintiff "to himself or his goods, or either." The combined efforts to get before the jury the fact of indemnity insurance undoubtedly had the effect to create in the minds of the jury that defendants were indemnified by a contract of insurance so as to lead its members to conclude that the burden of any verdict rendered would not have to be borne by the local corporate defendant, or by the driver of its truck, but that it would be borne exclusively by the indemnifying corporation. The purpose of all of such efforts, so appearing in the record, is so manifest that it cannot be ignored or excused. Counsel in making his statement to the jury and in omitting to include therein the fact of indemnity against personal injury, could have had no object whatever in view, *if* he intended to confine that effect to the loss *of goods* only, since no part of the

626

amount sought to be recovered was for any damages to any property of plaintiff, but only for his *personal* injuries, and all of which was evidently known at the time the statement was made. Therefore, the allegation in the petition, as well as the statement of counsel, was clearly intended to accomplish no other purpose than the one we have so often condemned, i. e., of wrongfully influencing the jury to return a verdict that, perhaps, it would not otherwise have done. The argument of counsel, supra, in avoidance of this error, we conclude, is insufficient for that purpose, since it did not remove the "insurance paint" nor the "perfumed insurance odor" referred to, supra, from the case.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to sustain the motion for a new trial, and for other proceedings consistent with this opinion. The whole court sitting.