**Louise HALL, Appellant,**

v.

**Mary M. RATLIFF, Appellee.**

Court of Appeals of Kentucky.

Feb. 7, 1958.

Petition for Rehearing Withdrawn
May 19, 1958.

Baird & Hays, Pikeville, for appellant.

V. R. Bentley, Pikeville, for appellee.

STEWART, Judge.

This action, instituted by plaintiff, Mary M. Ratliff, against defendant, Louise Hall, to recover damages for personal injuries caused by an automobile accident, resulted in a jury award of $3,640 to plaintiff. Defendant appeals. We shall refer to the parties throughout this opinion as "plaintiff" and "defendant".

These reasons are urged for reversal: (1) The lower court erred in refusing to direct a verdict for defendant because it is claimed negligence upon the part of defendant's driver was not proven; (2) the instructions did not adequately present the question of emergency to the jury and over-emphasized the duties of defendant's driver; and (3) counsel for plaintiff asked improper questions of the operator of the taxicab on cross-examination.

A preliminary statement of the facts is necessary in order to understand the contentions of defendant. The evidence discloses that plaintiff, Mary M. Ratliff, a passenger in a taxicab owned by defendant, Louise Hall, and operated on the occasion by one James Reynolds who was traveling toward Prestonsburg from Pikeville, ran off U. S. Highway No. 23 around midnight on December 17, 1955, some 18 miles north of Pikeville. Reynolds testified he met at a place known as Betsy Layne a large tractor-trailor truck which was ascending a slight hill that curved considerably to his left and which was traveling in the middle of the road. He stated that he slowed down practically to a stop, pulled to his right to avoid a collision with the vehicle, and dropped off the blacktop pavement onto the shoulder of the highway. He claims that, in undertaking to cut back onto his lane of traffic, after the truck had passed, he skidded on ice on the hard surface of the highway and went over an embankment on

his left into a fence, knocking down two iron posts. Reynolds said he had no notice of the condition of the highway until the moment his wheels were mounting upon the pavement. Plaintiff was thrown out of the taxicab with the result that her left arm was broken and other injuries were received.

Plaintiff, Mary M. Ratliff, the only eye-witness to this accident besides Reynolds, testified that the truck did not crowd or force Reynolds off the highway; that this vehicle "had already gone by when he pulled over"; and that the taxicab did not skid before it went over the embankment. She gave this brief and rather obscure explanation on cross-examination as to Reynolds' maneuvers with the car: "He pulled over and the truck went by and then he went back out into the road and then he went over and hit the end of the fence post."

There is a contrariety in the evidence as to whether the pavement was in an icy condition at the site of the accident. The operator of the taxicab, Reynolds, stated it was drizzling rain when he left Pikeville with plaintiff as a passenger and it was sleeting by the time he reached Betsy Layne. Defendant's witness, Homer Cecil, who arrived where the wreck occurred a short time after it happened, testified that the blacktop at the place where the car left the road was wet and he "imagined a car naturally would slide" at this spot because "the tires would be slippery." Plaintiff said the highway was dry when the taxicab departed from Pikeville but that she did not know the state it was in at Betsy Layne. Other witnesses testified that the highway en route to Pikeville was extremely slippery from midnight on.

■ The evidence clearly discloses an issue of fact was made out by the conflict-ing versions given by witnesses appearing in behalf of each of the parties as to whether the negligence of the taxicab oper-

ator caused the accident. The latter's testimony was in substance that the mishap was unavoidable because of the slippery or icy surface of the pavement; plaintiff's proof creates the inference that the driver lost control of the car through carelessness and, as a consequence, wrecked it, thereby causing her injury. We conclude the lower court properly allowed the jury to resolve this conflict developed by the evidence.

■ The next complaint concerns the refusal of the trial court to give an instruction offered by defendant that would allow the jury in effect to determine whether an emergency arose which the driver of the taxicab undertook to avoid and also to find his acts were excusable if they believed such were not caused by his negligence. On this point it is argued defendant's evidence established that the taxicab was compelled to get off the hard surface in order to escape collision with the truck and that it skidded on the pavement, which was icy or slippery, in returning from the shoulder of the highway, with the result that the driver thereafter was unable to control it.

To sustain her position, defendant relies upon Atlantic Greyhound Corporation v. Franklin, 301 Ky. 867, 192 S.W.2d 753, 755, which lays down this rule of law on the proposition under discussion: "While the driver must take into consideration the slippery condition of the highway, yet if the evidence shows that the accident resulted from a condition of the road and not from any negligence of the driver, no liability results, since it is common knowl-edge that an automobile may skid on a slippery highway without any negligence on the part of the operator. Gilreath v. Blue & Gray Transportation Co., 269 Ky. 787, 108 S.W.2d 1002."

In the light of the foregoing rule, it is our view the trial court committed a revers-ible error when it refused to give an emer-gency instruction, which defendant's coun-sel properly and timely requested. As a

defense to liability, defendant relied exclusively in the affirmative pleas of her answer upon an alleged emergency, which she claimed suddenly arose and made the accident inevitable. In our opinion the proof adduced by her made out an issue of fact on this point. It follows the lower court should have submitted her theory as to the cause of the accident to the jury. Without this instruction the duties of defendant's driver as set forth in "Instruction No. 1" were overemphasized. See Stanley's Instructions to Juries, Vol. 1 (1956 Ed.), sec. 24, p. 46.

■ A third ground insisted upon for reversal has to do with the course pursued by counsel for plaintiff in asking certain questions of Reynolds, defendant's driver, on cross-examination. In this connection, this witness was interrogated as to why he went back to the locale of the wreck the morning after its occurrence. He answered that he returned to search for plaintiff's glasses which he stated he found near the spot where she fell out of the car. He was then questioned whether he did not talk with the owner of the fence, a portion of which structure the taxicab had destroyed when it went over the embankment.

After considerable colloquy between plaintiff's counsel and this witness, the latter admitted he "talked to a man there." The next query was: "Well, what did you tell him?" The response was: "I told the man that we had insurance to take care of that fence and if we didn't I'd put the posts back there myself." Shortly thereafter, but after three other questions were asked, counsel for defendant approached the bench and moved to set aside the swearing of the jury and to continue the case for the reason that plaintiff's attorney had instituted a series of interrogations designed to bring out the fact that defendant's taxicab was covered with liability insurance. The

trial judge overruled the motion and the examination of this witness continued.

Had counsel for plaintiff at this juncture ceased his inquiry relative to the fence, we might readily infer that the reply Reynolds gave above was not in accordance with the query put to him and that the attorney was not deliberately seeking to elicit information about insurance on defendant's car. However, when this same counsel, after asking certain preliminary questions of a purely smoke-screen character, deviously came back again to the fence and twice more wanted to know if this witness had fixed it and both times the answer was that the insurance company would repair it, we can take no other view than that this attorney's deliberate design was to stamp indelibly in the minds of the jurors the fact that defendant had insurance on her taxicab, thereby hoping to influence them in favor of his client. Each of the last two times, in addition to the one we have previously mentioned, defendant's counsel moved to discharge the jury and to continue the case. These motions were overruled in each instance. It should also be pointed out that the trial judge at no time admonished the jury to disregard this type of evidence.

We are of the opinion that counsel for plaintiff committed a reversible error when he injected in the manner we have described the insurance issue into the trial of this case. What relevancy could the restoration of the fence have to the cause of the accident? The contention is advanced that Reynolds was asked no question and made no statement in respect to insurance that could be construed as prejudicial to defendant's substantial rights. This argument is specious, because it is well known that information brought to light that a litigant's car is insured against liability loss will immediately place him at a disadvantage and appreciably lessen his chances of winning before a jury. For this reason we have consistently held that

the projection of the insurance angle into a case will in practically every instance warrant a reversal. Every attorney knows the rule in regard to such evidence and he must not expect the court to establish a rule and then wink at its violation. See Star Furniture Co. v. Holland, 273 Ky. 617, 117 S.W.2d 603.

Wherefore, the judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

CAMMACK, J., dissents to that portion of the opinion that authorizes the giving of an emergency instruction.