Stott v. Hinkle.

Same v. Hill.

Same v. Petrey.

April 22, 1941.

144

Golden & Lay for appellant.

Charles B. Upton and Rose & Rose for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellees in these three cases claim that they suffered painful injuries to their bodies and nerves when the car in which they were riding, and which was being driven by Mrs. Mae Hinkle, was struck by a car being driven by Archie Stott, December 1, 1938. Both cars were proceeding in the same direction and it is contended that Stott's car struck Mrs. Hinkle's car as he was cutting it back to the right side of the road after pulling to the left to pass. It was alleged that Mrs. Hinkle was driving her car to the right of the center of the road and in a careful and prudent manner. It was further alleged that the left front fender of Mrs. Hinkle's car was damaged; that a casing was blown out; and that her car was knocked over to the side of the road. The appellees say they suffered the injuries complained of as a result of this collision. The position of Stott is that his car did not strike the Hinkle car. Each appellee was awarded $1,000.

Stott urges reversal upon the grounds that (1) his substantial rights were prejudiced by the arguments of counsel for the appellees, including the injection of the insurance question into the case; (2) the court instructed the jury erroneously; (3) there was misconduct on the part of the jury; and (4) the verdict is against the evidence and is excessive.

The doctor who first examined the appellees testified that they came to him on December 2d and that they

said they had been in an automobile accident and wanted to be examined to determine the extent of their injuries. When asked whether anything was said about collecting damages, the doctor answered, "Yes, I think so. Said they wanted pay for it." In substance, his testimony was that the women seemed to be nervous, possibly from shock, but that he did not find any objective symptoms in the way of bruises or abrasions. The appellees offered medical testimony, however, to support their statements as to their alleged injuries. Nevertheless, it is our view from an examination of the record that the awards made by the jury, $1,000 for each appellee, were exceedingly high. It is our further view that the appellant did not have a fair and impartial trial, and for this reason the judgment must be reversed.

Counsel for the appellees made an impassioned plea to the jury. Not infrequently he was told to confine his remarks to the evidence. We do not think it would have been improper for the trial judge to have taken a firmer hand, under the circumstances, in confining him to the record.

Our primary reason for reversing the judgments is that we think the insurance question was skillfully injected into the case. On recross-examination Mr. Stott was asked:

"You don't expect to pay for it at all?

"Defendant Objects: Sustained: Plaintiff Excepts.

"Motion: Defendant moved the court to admonish the jury not to consider the last above question; (No ruling)."

It is clear to us that this inquiry was made with the view of raising the insurance question. True it is that an objection to the question was sustained, but it is also true that the trial court failed to admonish the jury as to the question.

Among the statements made by counsel for the appellees in his closing argument to the jury, to which objection was properly raised, are the following:

"You have heard the same kind of arguments all this Court, corporation lawyers making that kind of argument, and these corporation lawyers

have made this kind of argument and will continue to make same * * *."

"They had this girl, Miss Owens, swear that Mrs. Hinkle, one of the plaintiffs, was down here in Williamsburg Monday and assisted in making a bed, but the lawyers did not do it, nor Stott didn't do it, but other influences did it * * *."

These actions were by individuals against an individual. There was no corporation involved in them. Under the circumstances we think there is basis for the complaint that there was an intimation to the jury that an insurance corporation was interested in the outcome of the litigation; especially, since the question had been put to Stott as to whether he expected to pay anything. The "other influences" referred to in the second statement quoted above certainly refer to some one other than Mr. Stott or his attorneys. The inference is that these "other influences" had Miss Owens testify as to certain happenings.

The question of insurance can be injected into a case without the use of the word "insurance." Where we have had reason to believe that there was a deliberate attempt to inject such a question into a case, we have had no hesitancy in condemning the practice. Randle v. Mitchell, 283 Ky. 501, 142 S. W. (2d) 124; Indian Refining Co. v. Crain, 280 Ky. 112, 132 S. W. (2d) 750; Star Furniture Co. v. Holland, 273 Ky. 617, 117 S. W. (2d) 603; Helton v. Prater's Adm'r, 272 Ky. 574, 114 S. W. (2d) 1120.

In the Randle case [283 Ky. 501, 142 S. W. (2d) 125] the plaintiff was asked who was responsible for her examination, and she answered, "The Insurance Company." There was objection to this question and answer and the trial court instructed the jury that they should consider the question and answer for no purpose whatever. In the closing argument counsel for the plaintiff said: "It does not make a great deal of difference what the amount of your verdict is, because it won't hurt the taxi company very much any way." We reversed that case because of the injection of the insurance question. The case before us is even stronger than the Randle case, when all the evidence as to the alleged injuries of the appellees and the size of the awards are considered.

Objection is raised to the first instruction given as to the duties of Stott on the ground that his theory of the case, namely, that his car was not involved in an accident with Mrs. Hinkle's car, was not presented. We think otherwise. The second instruction which relates to the measure of damages should be corrected on a second trial, if there be one, since it does not show clearly that any damages allowed for pain and suffering, which each party had endured or might hereafter endure, were the direct and proximate result of the alleged injuries.

We deem it unnecessary to discuss the question raised as to the misconduct on the part of the jury, since that question is not likely to arise in the event of another trial.

Wherefore, the judgments are reversed with directions to set them aside and for proceedings consistent with this opinion.