## IDEAL PURE MILK CO. et al. v. WHITAKER.

Court of Appeals of Kentucky.

Nov. 2, 1951.

Wm. L. Wilson, Geo. S. Wilson, Jr., H. Randolph Kramer, Owensboro, for appellants.

John B. Anderson & E. B. Anderson, Owensboro, for appellee.

STANLEY, Commissioner.

Trucks of the appellants, L. D. Jennings and Ideal Pure Milk Company, collided in the hamlet of Sorgho in the afternoon of April 12, 1949, and as a result Jennings' machine left the highway and struck the appellee, Ernest Whitaker, who was in a field close to the road. He suffered serious, permanent injuries. In his suit against both appellants the verdict was in his favor and against the company for $8,982 and against Jennings for $2,000.

While the briefs discuss other matters quite voluminously, the principal ground upon which a reversal of the judgment is sought is that the plaintiff's attorney deliberately injected into the trial the understanding that at least the defendant company was protected by indemnity insurance and thereby prejudiced the jury. A contingent argument is that in any event it was error for the court to fail to admonish the jury not to consider the introduction of the name of an insurance adjuster.

A professional photographer, as a witness for the defendants, filed some pictures of the scene of the accident. In the course of his cross-examination the witness stated in answer to a question that he had been directed where to place his camera by "a fellow named Carl Belcher." He was then asked, "Who is Carl Belcher?" The court sustained the defendants' objection. After a question about a memorandum book he had in his hand, plaintiff's counsel asked, "Were you paid for those pictures?" He answered, "Yes, sir." Then he was asked, "Who paid you?" The defendants' objection being sustained, the plaintiff avowed that if permitted to answer, the witness would state that he was accompanied to the scene "by some agent or officer of the defendants, Ideal Pure Milk Company." The court here overruled the defendants' motion to declare a mistrial "because the attorney for the plaintiff deliberately set about to instill in the minds of the jury that there was insurance involved and was successful in so doing." Then followed these questions and answers: "Q. Does Mr. Belcher work for you? A. No, s.r.

Q. Does he work for the Ideal Pure Milk Company? A. Not that I know of." The motion to declare a mistrial was renewed and overruled.

It may well be assumed that the reasons given by the defendants' attorney for his objections and motions were not heard by the jury. If they were, he, of course, is to blame. We have then only the quoted questions of plaintiff's attorney and the answers that in photographing the scene the witness had been directed by Carl Belcher, who did not work for the witness and, so far as he knew, did not work for the defendant company. There is also the unanswered question as to who Carl Belcher is. Acknowledging that the word "insurance" did not creep into the record, the appellants, nevertheless, argue that plaintiff's attorney well knew that Belcher was an adjuster for an insurance company interested in the case, and that his persistency in pursuing the inquiry was calculated to get that fact before the jury.

 We cannot follow appellants' argument that the court must presume that the jurors knew that Belcher represented an insurance company. The lawyers, with pardonable pride, say that while Owensboro is a "city of the first magnitude and Daviess one of the most important counties in the state," yet, after all, "we are a small community of approximately 35,000 inhabitants, and we know our neighbors pretty well." They say, wholly outside the record, that Belcher has lived in Owensboro a year and a half and has been very active in following his business. On the other side, the appellee, also out of the record, denies that Belcher is well known and to prove it, attaches to his brief photostatic copies of pages of the city and telephone directory showing that his name does not appear in either. But, so far as the record went, Belcher was a man of mistery.

We suppose no other court has been any more strict than we in ruling that any deliberate disclosure to the jury that a defendant is protected by indemnity insurance is prejudicial misconduct. This has been so even where the effort was covert or subtle, for we realize that there are many ways in which the idea may be instilled into the minds of the jury. But always there has been something tangible or definite that might have been seized upon. In short, the intent or purpose must have been manifested by an overt statement, such as a leading question or a question carrying such implication that a reasonable mind may grasp it. See Stott v. Hinkle, 286 Ky. 143, 150 S.W.2d 655. In the present case, we have only suspicious inquiries. Indeed, we are not so sure but what a definite disclosure that Belcher was an insurance adjuster would have been competent. See Herbold v. Ford Motor Company, 310 Ky. 697, 221 S.W.2d 646. We do not think any error was committed.

 There is no merit in the argument that the court should have admonished the jury not to consider the introduction of the name of Carl Belcher into the record, and that his failure to do so erroneously gave judicial approval to the alleged misconduct of the attorney for the plaintiff. It would be sufficient to rest this conclusion upon the foregoing decision, but there may be added that the defendant failed to ask for such admonition and, thereby, waived the omission.

The judgment is affirmed.