Sherry L. WHITE, Appellant,

v.

Patricia PILES, Appellee.

Court of Appeals of Kentucky.

Aug. 10, 1979.

Rehearing Denied Nov. 9, 1979.

John S. Kelley, Kelley & Heaton, Bardstown, for appellant.

William R. Gentry, Jr., Bardstown, for appellee.

Before COOPER, GANT and HOWERTON, JJ.

COOPER, Judge.

On January 12, 1975, plaintiff-appellant, Sherry L. White, while a passenger in an automobile driven by Richard Molyneaux, was involved in a collision with an automobile driven by defendant-appellee, Patricia J. Piles. Appellant suffered a shattered knee and a fractured knee joint. Subsequently, she filed suit naming Molyneaux and Piles as defendants. Because Molyneaux was uninsured, the Western Casualty and Surety Company was named as a defendant, since the policy it had provided White contained an uninsured motorist clause.

The case proceeded to trial where a verdict was directed imposing sole liability against Ms. Piles. Both Molyneaux and the insurance company were dismissed from the action at that point. The question of damages was submitted to the jury which returned a verdict for combined damages in White's favor against Piles in the amount of $24,312.00. Motion was made and a new trial was granted on the grounds that: 1) the existence of insurance had been improperly injected into the trial, and 2) that the verdict was excessive. A new trial was held solely on the question of damages. The jury awarded only $10,000.00 in damages at the second trial. During the second trial, counsel for defendant was permitted—over objection—to read into evidence the deposition of Dr. George McCrocklin who had been present as a witness and who had testified earlier at the second trial. A motion for new trial was denied. It is from judgment entered upon the second verdict that this appeal is taken.

Appellant complains that: 1) the trial court erred in the first instance by granting a new trial, and 2) in refusing to grant a new trial after the second trial.

I

One of the two reasons given by the trial court for granting a new trial was the improper injection of the existence of liability insurance into the case in the final argument before the jury. Appellant responds that the fact of insurance was already before the jury. This contention is not without arguable merit. An uninsured motorist, Molyneaux, was involved in this case. Under the regime of *Wheeler v. Creekmore,* Ky., 469 S.W.2d 559 (1971), it is proper in such cases for counsel for the insurance company providing the uninsured motorist's coverage to be identified. Otherwise, the jury would be left to speculate as to the interest represented by the attorney who, although participating in the trial, had no apparent connection with any of the parties. *See Wheeler, supra* at p. 563.

In accordance with *Wheeler,* counsel for the insurance company, in the presence of the jury, identified himself and his interest, which was the exposure to liability of the uninsured motorist Molyneaux. Logic would dictate that Ms. Piles, who was not identified as an uninsured motorist, would therefore be insured. We do not know what the jury actually thought at the point when Molyneaux and the insurance company were dismissed, but there was clearly sufficient information before it to support a conclusion that only an insured motorist was left in the case. But, whatever the

jury's state of mind or knowledge prior to the closing argument, counsel for appellant's statements at that time served to dispose of any remaining doubt or ignorance on the part of the jury as to Piles' insured status.

 No objection was made to the opening statements concerning insurance. Indeed, we find nothing objectionable there given the requirements of *Wheeler.* Objections were entered to two comments uttered by counsel for appellant in closing argument in which he stated to the effect that the judge had simplified matters for the jury by throwing out the *"only uninsured motorist in here,"* (emphasis ours) and in his rejoinder to a comment made by counsel for appellee in his closing argument concerning appellee's financial status and doubtful ability to pay any judgment which might be rendered against her. In response to opposing counsel's statement, counsel for appellant accused his counterpart of "just trying to pull a red herring over in front of you." In this latter statement we find no prejudicial error. A defendant's ability or inability to pay a judgment is no more relevant to the issue of liability than is the fact of insurance. A case should be tried on the merits without reference to the wealth or poverty of the parties. *Southern-Harlan Coal Co. v. Gallaier,* 240 Ky. 106, 41 S.W.2d 661 (1931). By injecting the issue of his client's ability to pay into his closing argument, counsel for appellee opened the door for the comment in response by counsel for appellant. Under such circumstances the comment was not prejudicial. *Cf. Aker v. Smith,* Ky., 290 S.W.2d 496 (1956).

The "uninsured motorist" comment made by counsel for appellant may not be disposed of so easily. Granting that the jury had sufficient information before it from which it *could* have concluded that appellee was insured, counsel's comment erased any doubt in that regard and positively emphasized the existence of insurance. It was unnecessary and we cannot say the record shows clearly that no prejudice resulted. For that reason we must uphold the trial court's ruling granting a new trial. *Cf. Finch v. Conley,* Ky., 422 S.W.2d 128 (1967).

 In upholding the trial court, we do not disregard the teaching of *Wheeler, supra.* Rather, we interpret it narrowly in light of the long-standing rule in Kentucky prohibiting the mention of insurance even indirectly in jury cases. *See, e. g., Randle v. Mitchell,* 283 Ky. 501, 142 S.W.2d 124 (1940). The rule excluding any mention of insurance is founded on the premises that it is irrelevant to the issue of whether insureds tend to be less careful than uninsureds and, more importantly, that knowledge of insurance coverage might cause the jury to impose liability without regard to fault. *See Star Furniture Co. v. Holland,* 273 Ky. 617, 117 S.W.2d 603 (1938); Lawson, *Ky. Evidence Law Handbook* § 2.40 p. 29 (1976). The prohibition against mentioning insurance is so embedded in the law of Kentucky that we feel constrained to interpret *Wheeler* narrowly as permitting only such mention of insurance as is necessary to effectuate its principal purpose, which is to clear up any confusion in the minds of the jury as to what interests respective counsel represent. Counsel's comment did not fall within this exception and there is no clear showing it was not prejudicial. The trial judge's grant of a new trial was therefore proper.

We do not reach the question of whether the award of damages was excessive, except to note in passing our reservation as to whether the damage award was so large that it struck our mind at first blush as being superinduced by passion or prejudice—or knowledge of insurance. However, a comparison of the amounts of the two verdicts does furnish ground for some interesting speculation in this regard.

## II

Appellant's second point on appeal is that the trial court erred during the second trial by permitting Dr. McCrocklin's deposition to be read into evidence during appellee's case, even though the doctor had testified earlier at the second trial, but at the time the deposition was read had been excused as a witness. Appellee argues that the

deposition was admissible for impeachment purposes. While that assertion is correct, the proper method for using a deposition to impeach was not followed in this instance.

6 W. Clay, *Kentucky Practice,* CR 32.01, Comment 4 (3rd ed. 1974) states:

> Before the deposition may be used to contradict or impeach the witness' testimony, a foundation must be laid as required by Rule 43.08. *Id.* at p. 506.

Although we have located no Kentucky case expressly rejecting the method used to impeach at trial below, the rule as stated by *Clay, supra,* squares with the plain language of CR 43.08 which states in relevant part:

> Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it. . . .

The language of the rule would clearly encompass a deposition, and we have heard no reason advanced here which would justify the creation of an exception. To the contrary, we think that where a witness has made a prior sworn statement which is arguably contradictory, he is especially entitled to have that fact pointed out to him and to be afforded an opportunity to explain the inconsistency.

In reviewing the record, we find that Dr. McCrocklin's deposition substantially contradicts his testimony from the witness stand. Since there are material conflicts which most surely affect the weight and credibility of the witness's testimony, it cannot be said that the error was merely harmless.

It gives us no pleasure to order a third trial in this case, but we must since the requirements of CR 43.08 were not followed and we cannot say with reasonable certainty the error was harmless.

This case is reversed and remanded for a new trial.

All concur.