**Bonita EARLE, Appellant,**

v.

**Alice S. COBB and Indiana Insurance Company, Appellees.**

**No. 2000–SC–0818–DG.**

Supreme Court of Kentucky.

Dec. 16, 2004.

Rehearing Denied March 17, 2005.

Mike Breen, Kerry S. Morgan, Bowling Green, for appellant.

Reford H. Coleman, Eric Allen Hamilton, Coleman Lochmiller Bond & Hess, Elizabethtown, for appellee Alice S. Cobb.

W. Douglas Myers, W. Jonathan Sweeten, Jack N. Lackey, Deatherage, Myers, Self & Lackey, Hopkinsville, for appellee Indiana Insurance Company.

Opinion of the Court by Chief Justice LAMBERT.

The issue presented is whether an underinsured motorist (UIM) carrier must be identified at trial when it chooses to preserve its subrogation rights by means of the procedure set forth in *Coots v. Allstate Ins. Co.*[1] (the "*Coots* procedure"). We conclude that the UIM carrier should be so identified as a party because it was named as a party by virtue of its contract and because it chose to retain its subrogation rights by substitution of its payment for that of the liability insurance carrier. As the trial court and the Court of Appeals held otherwise, and the case was tried without all real parties, we reverse and remand for a new trial.

On February 17, 1998, Appellant, Bonita Earle, and Appellee, Alice Cobb, were involved in an automobile accident in Muhlenberg County. As a result of the accident, Earle was injured. She sought recovery from Appellee Cobb and from her UIM carrier, Appellee Indiana Insurance Company (Indiana Insurance). Earle sought damages for medical expenses, lost wages, and pain and suffering. Indiana Insurance filed a cross-claim against Cobb for indemnity.

---

1. Ky., 853 S.W.2d 895 (1993). The *Coots* procedure has been statutorily adopted and is codified at KRS 304.39–320.

Prior to trial, Cobb's liability insurance carrier, Hartford Insurance Company, offered its policy limit of $25,000 to Earle as full settlement of her claims against Cobb. Earle was willing to accept this sum, but as was its right, the UIM carrier, Indiana Insurance, elected to preserve its subrogation right against Cobb by using the *Coots* procedure of substituting its payment for Hartford's (liability carrier) proposed $25,000 settlement. Thus, Cobb was not released and she remained a party defendant.

For the purposes of trial, the court ordered Earle's claims against Indiana Insurance for UIM benefits to be determined after the jury rendered a verdict. The trial court also held that the existence of the UIM coverage provided by Indiana Insurance could not be revealed to the jury. Thus, Indiana Insurance was not identified as a party, did not participate at trial, and agreed to be bound by the jury verdict. However, Indiana Insurance did defend by participating in pretrial motions and discovery. In short, the case was tried to the jury as *Earle v. Cobb,* and nothing more was revealed.

During its deliberations, the jury asked the trial judge the following question: "Is insurance involved or is it coming from Ms. Cobb?" The trial judge declined to answer the jurors' question. Thereafter a verdict was returned and Earle was awarded $500.00 for pain and suffering, $500.00 for past medical bills, and $500.00 for lost wages. Judgment was entered thereon. Earle appealed and Cobb cross-

appealed to the Court of Appeals. In its opinion, the Court of Appeals affirmed the trial court holding that the interest and participation of Indiana Insurance was properly withheld from the jury. Earle was granted discretionary review by this Court.

■ CR 17.01 provides, in part, "Every action shall be prosecuted in the name of the real party in interest.... Nothing herein, however, shall abrogate or take away an individual's right to sue." [2] In the case at bar, Appellee Indiana Insurance was a party defendant in the trial court and was allowed to participate in all pretrial proceedings and discovery.[3] At trial, however, it was not identified and the case was presented as if the only parties were the plaintiff, Earle, and the defendant, Cobb. Such a trial is fundamentally misleading to the jury and it deprives a plaintiff of the right to try her case against the party she chooses.[4]

■ For sound policy reasons, evidence of liability insurance to show culpability is excluded. However, where a direct contractual relationship exists between a plaintiff and a defendant insurance company no such policy is warranted. In *Wheeler v. Creekmore,*[5] we explained this proposition as follows:

> The insurance company was in fact a party and we think properly so, because it had a direct contractual obligation to Mrs. Wheeler. Since the company was a party and was actively represented by counsel we think the jury was entitled to

2. CR 17.01.

3. A party who undertakes defense of a case and avoids default is a party for all purposes. *Cf. Stuart v. Richardson,* Ky., 407 S.W.2d 716 (1966) (holding real party in interest is one entitled to the benefits of action upon the successful termination thereof). One cannot be a party for purposes of motion and discov-

ery, and later strategically conceal its identity at trial. *See King v. State Farm Mut. Auto. Ins. Co.,* 157 Md.App. 287, 294–96, 850 A.2d 428, 434–436 (2004).

4. CR 17.01.

5. Ky., 469 S.W.2d 559 (1971).

know that fact and to have the company's counsel identified. Otherwise the jury would be left to speculate as to the interest represented by an attorney participating in the trial who had no apparent connection with any of the parties. It is our opinion that the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield in uninsured-motorist [UM] cases to the procedural desirability of letting the jury know who are the parties to the litigation where the uninsured motorist carrier elects to participate actively in the trial.[6] (Citations omitted).

While *Wheeler* addressed UM coverage, we held in *Coots v. Allstate Ins. Co.* that UM and UIM coverage should be treated similarly as the purpose and intent of their coverages is similar.[7]

Kentucky is not alone in recognizing the right of a plaintiff to bring a contract claim against his or her UIM carrier and have that UIM carrier identified as such at trial.[8] The reasoning employed in some jurisdictions for allowing identification of UIM or UM carriers to the jury is well articulated in *King v. State Farm Mut. Auto. Ins. Co.*[9]:

In the instant matter, the defendant, a corporation, has no personal right of privacy. Further, the unsubstantiated belief by State Farm that its disclosure as the defendant would adversely affect the jury's verdict furnishes insufficient justification for withholding from the jury, and from the general public, State Farm's identity as the defendant at a public trial. The lack of *per se* prejudice to the UM/UIM carrier in being identified at a trial at which the insured's damages, under the policy, are determined by rules applicable to tort cases is shown by the permissibility of joining, as defendants in an action brought by the insured, the tortfeasor *and* the UM/UIM carrier. Indeed, State Farm's position here is no different from that of any insurer that is sued directly for breach of its policy or from that of any apparently "deep pocket" corporation that is sued for breach of contract by its promisee. We hold that the circuit court abused its discretion in imposing this partial blackout on public information. (citations omitted).[10]

Prejudice to a UM/UIM carrier from being identified as a party has been considered insignificant, and in any event the contractual relationship and full disclosure must prevail.[11] The Supreme Court of Florida

6. *Id.* at 563.

7. 853 S.W.2d at 903.

8. *E.g., Lima v. Chambers,* 657 P.2d 279, 285 (Utah 1982) (identity of intervening insurance company should be made known to the jury); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Canady,* 197 W.Va. 107, 475 S.E.2d 107, 113 (1996) ("[T]he jury is entitled to be aware of the uninsured motorist carrier's identity"); *Tucker v. McQuery,* 107 Ohio Misc.2d 38, 736 N.E.2d 574, 576 (1999) ("[J]urors have the right to know who the real party in interest is"); *Lamz v. Geico Gen. Ins. Co.,* 803 So.2d 593 (Fla.2001) (holding petitioners are entitled to have their UIM carrier identified as

such, when the carrier is joined as party defendant).

9. 157 Md.App. at 298–99, 850 A.2d at 435.

10. *King,* 157 Md.App. at 298–99, 850 A.2d at 435.

11. *Id.* at n. 6 (noting federal magistrate judge considered any prejudice "not significant" when denying the carrier's motion *in limine* seeking to suppress its identity by relying on *Farley v. Allstate,* 355 Md. 34, 733 A.2d 1014 (1999) and *Allstate v. Miller,* 315 Md. 182, 553 A.2d 1268 (1989); *See also Connolly v. Lotkin,* 2000 WL 1508258 (D.Md.2000)).

has recently held in *Medina v. Peralta*[12] that a trial court's failure to identify to the jury a properly joined UM/UIM motorist carrier to be per se reversible error.[13]

As in the foregoing cases, Earle brought a direct action against her UIM carrier and Cobb. The claim against Cobb was based on negligence and the claim against the UIM carrier was based on its contractual undertaking. As analyzed by the Florida Court, the danger of not naming Indiana Insurance at trial is that the jury is left to "speculate about the exact role of plaintiff's carrier in the lawsuit, perpetuating the 'charades in trials.' "[14] The note from the jury verifies this. As reiterated in *Wheeler*,[15] and in *King* and *Medina*, the policy of full disclosure outweighs any prejudice that Indiana Insurance might experience.

■ Appellant also argues that it is improper to maintain the legal fiction of permitting the UIM carrier to either participate or sit idly by and allow the tortfeasor to defend at trial, thereby hiding the identity of a bona fide party. *Coots* criticized this "legal fiction" of substituting the name of the tortfeasor for the UIM carrier.[16] The basis for the criticism was enhanced with our decision in *True v. Raines* whereby the tortfeasor's liability to the plaintiff is totally extinguished when the *Coots* procedure is undertaken.[17] When only the tortfeasor is identified, a fictitious presence appears at trial instead of the bona fide party. Moreover, when that practice is followed, one with only a contingent and secondary liability by means of subrogation is presented as the solely and exclu-

sively liable party. We denounced this practice in *Coots* :

> There is no more reason to create a legal fiction by substituting the name of the tortfeasor for the UIM carrier, when the carrier alone is the real party in interest in UIM cases, than there is reason to do so when dealing with UM coverage. The issue of permitting a "legal fiction" to be employed has been laid to rest in uninsured motorist claims which involve a direct action against the UM carrier in *Wheeler v. Creekmore*, Ky., 469 S.W.2d 559 (1971). *Underinsured and uninsured carriers should be treated similarly, as their purpose and the intent of their coverage is similar.*[18] (emphasis added).

In our recent decision in *True*, we held that when a UIM used the *Coots* procedure, the tortfeasor is released from liability to the plaintiff.[19] Although the tortfeasor remains liable for indemnity to the UIM, the UIM then becomes the only real party with potential liability to the plaintiff. Precedent, parity, and fairness demand that this Court put an end to charades and legal fictions, and treat UIM and UM carriers the same. Therefore, we hold that the failure to identify to the jury a named party defendant at trial that is also the plaintiff's UIM carrier to be reversible error.

With respect to Appellees' argument that KRE 411 would prevent UIM identification, there is no rule of exclusion of evidence showing insurance coverage if offered "for another purpose, such as proof

**12.** 724 So.2d 1188 (Fla.1999).

**13.** *Id.* at 1189.

**14.** *Lamz v. Geico Gen. Ins. Co.,* 803 So.2d 593, 596 (Fla.2001).

**15.** 469 S.W.2d 559 (1971).

**16.** 853 S.W.2d at 903.

**17.** Ky., 99 S.W.3d 439, 448 (2003).

**18.** *Coots,* 853 S.W.2d at 903.

**19.** 99 S.W.3d at 448.

of agency, ownership, or control, or bias or prejudice of a witness."[20] Whether Ms. Cobb had liability insurance is not at issue. Indiana Insurance is a party defendant to this action based upon the contractual relationship between Appellant and Indiana Insurance, her UIM carrier. As stated hereinabove, when Indiana Insurance invoked the *Coots* procedure it should have been identified as a party to the jury.

For the forgoing reasons, we reverse the Court of Appeals and remand to the trial court for proceedings consistent with this opinion.

GRAVES, STUMBO, and WINTERSHEIMER, JJ., concur.

GRAVES, J. files a separate concurring opinion.

COOPER, J., dissents by separate opinion in which JOHNSTONE, J., joins.

KELLER, J., dissents and would affirm the Court of Appeals in accordance with the legal analysis contained in Justice COOPER'S dissenting opinion, but does not join that opinion because he strongly disagrees with the dicta contained therein that the majority opinion "seriously misstated and/or misrepresented the holdings" of precedents in furtherance of an alleged "anti-business, anti-insurance" agenda of this Court.

GRAVES, Justice, concurring.

I concur with the majority because I believe it would be a fraud upon the jury not to let them know the entire truth. The direct inquiry by the jury concerning insurance reveals there is a pervasive commonality concerning automobile insurance in Muhlenberg County, Kentucky. We live in a state where liability insurance is compulsory and most jurors operate motor vehicles.

In paying for insurance, jurors are made aware of the direct correlation between premiums and losses, especially since insurance companies advertise to protest jury awards. Today liability insurance is prevalent, and jurors likely assume insurance is involved in vehicular accidents. Prejudice should no longer be presumed merely because insurance is mentioned. When the rule against mentioning insurance originated, most people neither owned nor operated motor vehicles and insurance was not common.

After all, Louisiana has a direct action statute in which insurance companies may be named as a party along with the defendant and the sky has not fallen yet.

COOPER, Justice, dissenting.

Today, the majority of this Court holds that it is reversible error to deny a plaintiff in a tort action arising out of a vehicular accident the right to inform the jury that the defendant is covered by a policy of liability insurance. Because that decision abrogates generations of common law decisions to the contrary in this and every other jurisdiction in the United States save one (Florida), I dissent.

**I. FACTS.**

On February 17, 1998, Bonita Earle was injured when her automobile collided with an automobile owned and operated by Alice S. Cobb. Cobb, a retired schoolteacher, was exiting a high school parking lot when she failed to yield the right-of-way to Earle's vehicle. The trial court ruled that Cobb's negligence was the sole cause of the collision, and that issue is not pursued on this appeal. Cobb was insured by a policy of insurance issued by the Hartford

---

20. KRE 411.

Insurance Company ("Hartford") with liability coverage limits of $25,000 per person and $50,000 per accident. KRS 304.39–110(1)(a)(1). Earle was insured by a policy of insurance issued by Indiana Insurance Company ("Indiana") with underinsured motorist (UIM) coverage limits of $200,000. KRS 304.39–320(2). Earle brought an action in tort against Cobb and in contract against Indiana Insurance. Indiana filed a cross-claim against Cobb for indemnity for any amounts it might be required to pay under its insurance contract with Earle because of Cobb's negligence.

Cobb's insurer, Hartford, offered to pay Earle its $25,000 liability limit to settle her claim against Cobb. Pursuant to *Coots v. Allstate Ins. Co.*, Ky., 853 S.W.2d 895, 902–03 (1993),[1] Indiana substituted $25,000 of its own money for Hartford's settlement offer. Earle accepted Hartford's settlement offer and Indiana's $25,000, thus precluding any additional recovery by Earle against Cobb. *True v. Raines*, Ky., 99 S.W.3d 439, 448 (2003). However, Indiana's substitution of its money for Hartford's preserved its subrogation claim against Cobb. *Id.; Coots*, 853 S.W.2d at 902. After the settlement, Earle had a contractual right to collect any judgment in excess of $25,000 from Indiana, Indiana had a right of indemnity against Cobb for any such sums it was required to pay Earle, and Cobb thus remained personally liable for any amounts payable to Earle in excess of $25,000. Assuming Cobb was solvent and able to pay any excess judgment (and no one in this case suggests otherwise), Indiana's role in the case was merely that of a conduit—Indiana would pay Earle any part of a judgment against Cobb that exceeded $25,000 and would be reimbursed by Cobb for any such payment made. In that scenario, Cobb was the real party in interest with respect to any judgment in tort rendered in favor of Earle in excess of $25,000.

Prior to trial, Cobb (not Indiana) filed a motion *in limine* to bifurcate the issue of her tort liability from the issue of Indiana's contractual liability to Earle. The logic of her motion is inescapable; for if the jury knew that Indiana was an *under*insured motorist carrier, they would *ipso facto* know that Cobb was insured by a policy of liability insurance—though *under*insured in Earle's view. The trial court sustained Cobb's motion to bifurcate and ruled that Earle's contractual claim against Indiana "shall be handled post verdict." The trial court's order also prohibited Indiana from participating in the trial or in any depositions that might be used at trial. In compliance with this order, Indiana's attorney *did not participate in the trial in any respect* and did not ask any questions of the medical witnesses during their pretrial depositions.

During the course of deliberating their verdict, the jury sent Judge Jernigan a note inquiring, "Is insurance involved *or is it coming from Ms. Cobb?*" (Emphasis added.) The judge appropriately replied that he could not answer the question. The jury returned a verdict awarding Earle $500 for pain and suffering, $500 for medical bills, and $500 for lost wages, for a total of $1,500. The trial court entered judgment against Cobb in accordance with the verdict, and Earle has not asked for a new trial on grounds that the verdict was inadequate. Since Earle had already settled with Cobb for $25,000, and since the verdict did not exceed the amount of Hartford's liability policy limits, the verdict and

---

**1.** This accident occurred before the 1998 amendment of KRS 304.39–320(3), (4) and (5) that codified the *Coots* procedure.

judgment exonerated Indiana and relieved Cobb from any potential indemnity liability.

## II. PREJUDICE.

The majority of this Court now reverses and remands this case for a new trial, holding that it was reversible error to preclude Earle from informing the jury that she had sued both Cobb and her own *under*insurance carrier, thereby also informing the jury (1) that Cobb was covered by a policy of liability insurance, and (2) that any verdict rendered against Cobb would be paid by either or both insurance companies. *Ante,* at 261. Of course, Indiana can inform the jury that Cobb must reimburse Indiana for any money that Indiana is required to pay Earle. That, however, will not eliminate the prejudice to Cobb stemming from the jury's knowledge that she is covered by a policy of liability insurance. And, of course, since the majority's holding will apply to every case in which a plaintiff sues both the tortfeasor and the plaintiff's UIM carrier—whether or not a *Coots* settlement has occurred—the effect of today's holding is that every juror in every vehicular tort action where the defendant is insured and the plaintiff has a policy providing UIM coverage will be informed that the defendant is covered by a policy of liability insurance. After all, what sane plaintiff would not join his or her UIM carrier, regardless of the limits of the defendant's liability coverage, in order to prejudice the jurors by informing them that the defendant is covered by a policy of liability insurance?

Every jurisdiction in the United States, including ours, recognizes the inherent and pervasive prejudice that results from informing a jury in a tort action that any verdict rendered against the defendant will be paid by an insurance company. *See generally* J.B. Glen, Annotation, *Admissibility of Evidence, and Propriety and Effect of Questions, Statements, Comments, Etc., Tending to Show that Defendant in Personal Injury or Death Action Carries Liability Insurance,* 4 A.L.R.2d 761 (1949 and Supp.2004) (citing literally thousands of cases). Of all of those cases, however, none has better or more colorfully explained the prejudicial effect of exposing jurors to such information than did our predecessor court in *Star Furniture Co. v. Holland,* 273 Ky. 617, 117 S.W.2d 603 (1938):

It would be difficult—even beyond the power of overcoming—to conclude that such reference to the question of insurance did not have the desired effect to give the case an "insurance" coating, and to sprinkle it with an "insurance" perfume—all of which we have said in numerous cases was calculated to influence the jury in arriving at its verdict, both upon the issue of culpable negligence, as well as the amount of remuneration.

... [W]e, as well as all courts, have held that the average juror is either unconsciously or otherwise influenced by the fact that the alleged negligent actor carries insurance. Such average juror, it has been found, is frequently led astray and returns an unauthorized verdict because he concludes that the defendant against whom it is rendered will not be required to pay it out of his individual funds because of indemnity insurance carried by him. Knowing that fact counsel representing injured plaintiffs frequently seek to get before the jury the fact of such indemnity insurance being carried by the defendant in such tort actions, and we, as well as other courts, have never failed to condemn it.... The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this

evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation....

... The combined efforts to get before the jury the fact of indemnity insurance undoubtedly had the effect to create in the minds of the jury that defendants were indemnified by a contract of insurance so as to lead its members to conclude that the burden of any verdict rendered would not have to be borne by the local corporate defendant, or by the driver of its truck, but that it would be borne exclusively by the indemnifying corporation.... Therefore, the allegation in the petition, as well as the statement of counsel, was clearly intended to accomplish no other purpose than the one we have so often condemned, i.e., of wrongfully influencing the jury to return a verdict that, perhaps, it would not otherwise have done. The argument of counsel, supra, in avoidance of this error, we conclude, is insufficient for that purpose, since it did not remove the "insurance paint" nor the "perfumed insurance odor" referred to, supra, from the case.

*Id.* at 606–07. *See also Turpin v. Scrivner*, 297 Ky. 365, 178 S.W.2d 971, 974 (1944) ("[T]he effect of bringing to the knowledge of the jury the fact of defendant's indemnity against such accidents permeates the case as thoroughly and completely as dissolved sugar in hot liquid, and cannot be more easily separated or eradicated."). Even indirect references to the existence of liability insurance have been condemned. *See e.g., Bybee v.*

*Shanks*, Ky., 253 S.W.2d 257, 260 (1952) (statement in closing argument that "I am satisfied [the named defendants] think [the plaintiff] ought to be paid," implying that defendants were insured, thus would not have to pay the verdict); *Randle v. Mitchell*, 283 Ky. 501, 142 S.W.2d 124, 125 (1940) (statement in closing argument that, "It does not make a great deal of difference what the amount of your verdict is, because it won't hurt the taxi company very much any way.").

The jury's inquiry in the case *sub judice* as to whether the judgment would be paid by insurance or by Cobb clearly indicates that the prejudice resulting from the interjection of insurance into a tort case has not diminished in the sixty-six years since *Holland* was decided. The jury's inquiry obviously indicates that the verdict would have been different if the jurors had known that the judgment would be paid by insurance rather than by Cobb, and the inquiry reinforces the universally recognized truism that a jury's knowledge that any verdict will be paid by insurance and not the tortfeasor will poison the verdict.

As exemplified by *Holland*, some personal injury lawyers will employ any device and risk any penalty to administer that poison. Consider *White v. Piles*, Ky. App., 589 S.W.2d 220 (1979), in which the plaintiff was injured in a collision between an uninsured vehicle and an insured vehicle in which she was a passenger. The plaintiff sued the uninsured motorist, the insured vehicle's uninsured motorist (UM) insurance carrier, and the driver of the insured vehicle. At the conclusion of the evidence, the trial court directed a verdict in favor of the uninsured motorist on the issue of liability, dismissing the complaint against him and the UM carrier,[2] and directed a verdict in favor of the plaintiff

**2.** Coincidentally, the author of this opinion was the trial attorney for the UM carrier in

*White*—one of the rare occasions when I was on the positive end of a directed verdict.

against the insured driver, requiring the jury to decide only the issue of damages. *Id.* at 221. In closing argument, the plaintiff's attorney remarked that the judge had simplified matters for the jury by throwing out the *"only uninsured motorist in here."* *Id.* at 222. The jury's verdict for $24,312 was set aside because of that remark and, upon a retrial at which insurance was not mentioned, the plaintiff received a verdict for only $10,000. *Id.* at 221. After today, of course, plaintiff's attorneys need not fear the consequences of poisoning the verdict by "sneaking in" evidence that the defendant is covered by a policy of liability insurance. Now, a UIM-covered plaintiff is absolutely entitled to inform the jury of that fact.

## III. THE MISREPRESENTATION OF PRECEDENTS.

In holding that a UIM-covered plaintiff is entitled to a prejudiced jury and a poisoned verdict, the majority opinion has seriously misstated and/or misrepresented the holdings of our own precedents and those of other jurisdictions. That, of course, will not surprise anyone familiar with the anti-business, anti-insurance opinions of this Court over the past fifteen years. *See, e.g., Nationwide Mut. Ins. Co. v. Hatfield,* Ky., 122 S.W.3d 36, 44–61 (2003) (Cooper, J., dissenting).

In *Wheeler v. Creekmore,* Ky., 469 S.W.2d 559 (1971), our predecessor court *did not,* as the majority asserts, hold that a UM carrier must be identified to the jury "where a direct contractual relationship exists between a plaintiff and a defendant insurance company." *Ante,* at 259. *Wheeler* only held that the UM carrier must be identified when the carrier's counsel actively participates in the trial.

> Otherwise the jury would be left to speculate as to the interest represented by an attorney participating in the trial

*who had no apparent connection with any of the parties.* It is our opinion that the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield in uninsured-motorist cases to the *procedural desirability* of letting the jury know who are the parties to the litigation *where the uninsured motorist carrier elects to participate actively in the trial.*

*Id.* at 563 (emphasis added). Of course, as has been noted by other courts, *infra,* in an uninsured motorist case, the UM carrier generally will participate actively at trial because the uninsured motorist usually does not have the financial means to retain counsel or to mount a defense. The same is not true in an underinsured motorist case where the defendant will be represented by counsel provided by the defendant's liability insurer.

And, contrary to the representation in the majority opinion that *Coots v. Allstate Insurance Co.* somehow supports today's decision, *ante* at 261, *Coots* did not hold that the UIM insurer must be named as a party defendant at trial. *Coots* only held that the UIM insurer *cannot defend the case in the tortfeasor's name* (as can the tortfeasor's liability insurer).

The UIM carriers have raised as a collateral issue whether they should be able to defend before the jury in a suit against the UIM carrier in the name of the tortfeasor rather than in their own name, claiming that it is fundamentally unfair to take aim against them as a target defendant....

There is no more reason to create a legal fiction by substituting the name of the tortfeasor for the UIM carrier, *when the carrier alone is the real party in interest in UIM cases,* than there is reason to do so when dealing with UM

coverage.... Underinsured and uninsured carriers should be treated similarly, as their purpose and the intent of their coverage is similar.

*Coots,* 853 S.W.2d at 903 (emphasis added). Of course, the carrier is not the only real party in interest in this UIM case. Cobb is not a "fictitious presence," *ante* at 261; she is the real party in interest because she will have to pay any judgment rendered in favor of Earle.

Nor do any of the foreign cases cited in the majority opinion support the result reached in this case. In *King v. State Farm Mutual Automobile Insurance Co.,* 157 Md.App. 287, 850 A.2d 428 (2004), the plaintiff brought a separate action against the UIM insurer *after* settling with the underinsured tortfeasor. *Id.* at 430. The UIM carrier *waived its subrogation rights* against the tortfeasor, *id.* at 430 n. 1, and the tortfeasor was never a party to the action against the UIM carrier; thus the "carrier alone [was] the real party in interest." *Coots,* 853 S.W.2d at 903. The issue in *King* was whether the UIM carrier could defend the action anonymously, *i.e.,* without being identified to the jury as an insurance company. Thus, the issue in *King* was factually identical to that in *Wheeler v. Creekmore,* and bore no factual resemblance to the case *sub judice.*

*State ex rel. State Farm Mutual Automobile Insurance Co. v. Canady,* 197 W.Va. 107, 475 S.E.2d 107 (1996), was not an action in which the insurer sought to conceal its identity from the jury. It was an original action in an appellate court in which the UM insurer petitioned for a writ to require the trial court to allow it to intervene in its insured's tort action against an uninsured motorist so that the insurer could mount a defense in its own name and with its own counsel. *Id.* at 109, 475 S.E.2d 107. A West Virginia statute, W. Va.Code § 33–6–31(d), permits a UM or UIM carrier to defend an action brought against an uninsured or underinsured tortfeasor in the name of the tortfeasor, in its own name, or in the names of both. *See Tilley v. Allstate Ins. Co.,* 40 F.Supp.2d 809, 812 (S.D.W.Va.1999) (interpreting West Virginia law and granting motion to join underinsured tortfeasor so that UIM carrier could defend in tortfeasor's name, even though plaintiff had settled with tortfeasor and UIM carrier had waived subrogation rights against tortfeasor).

In defending against the petition for a writ, the plaintiff in *Canady* relied on *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993), which had suggested that the insurer could raise only policy defenses in its own name and must otherwise defend in the name of the alleged tortfeasor. *Id.* at 759. *Canady,* a UM case, distinguished *Karl,* a UIM case, as holding only that (1) a UIM carrier could not assume the defense of an underinsured tort defendant who was already represented by his or her own liability carrier, *Karl,* 437 S.E.2d at 758; and (2) a UIM carrier could not defend in its own name if the tort defendant was being defended by a liability carrier, presumably because of the prejudice flowing to the tort defendant from informing the jury that he was insured, *id.* at 759. *Canady,* 475 S.E.2d at 110–11. In *Canady,* the uninsured motorist was not represented by counsel, but the UM carrier wanted to distance itself from him. *Id.* at 111. *Canady* held that the UM carrier could intervene, noting that one purpose of the statute was to prevent prejudice against insurance companies and that the UIM carrier had waived its right not to have insurance mentioned in the negligence case. *Id.* at 114. Since the tortfeasor was uninsured, identifying the UM carrier to the jury did not prejudice him.

*Canady* also noted that UM coverage, like liability coverage, is primary coverage while UIM coverage is only secondary coverage, analogous to excess liability insurance. *Canady,* 475 S.E.2d at 111 n. 4. That analogy comports with our own characterization of UIM coverage as conceptually permitting the insured. to purchase additional liability coverage for the vehicle of a prospective underinsured tortfeasor. *LaFrange v. United Serv. Auto. Ass'n,* 700 S.W.2d 411, 414 (1985). *Canady* further noted that in a UIM case, the tort defendant generally has counsel provided by the liability insurer, so there is no need for the UIM carrier to participate, whereas in a UM case, the tortfeasor often does not have private counsel, so the UM carrier has no choice but to actively participate to protect its interests. *See Canady,* 475 S.E.2d at 112 n. 8. All of these points contradict the majority opinion's reasoning in the case *sub judice.*

*Lima v. Chambers,* 657 P.2d 279 (Utah 1982), was similar to *Canady* in that a UM carrier had unsuccessfully sought to intervene and defend in its own name a tort action brought by its insured against an uninsured motorist. The plaintiff did not sue the UM carrier and had obtained an uncounselled affidavit from the defendant in which he admitted liability. The plaintiff had used this affidavit to obtain a summary judgment on the issue of liability. The UM carrier sought to intervene to defend against the issue of damages, arguing that the defendant was unrepresented and unlikely to provide an adequate defense to the issue. The plaintiff asserted that its relationship to the UM carrier was contractual, *i.e.,* the UM carrier was obligated to pay any judgment obtained against the uninsured motorist, but had no right to participate in the plaintiff's tort action. *Id.* at 280. Relying on Utah's equivalent of CR 24.01, *Lima* held that the UM carrier could intervene as a matter of

right, overruling two prior cases holding otherwise. *Id.* at 284. Those prior cases had held that a UM carrier could not be a party to a tort action against an uninsured motorist because of the prejudice resulting from the interjection of insurance into the case. *Kesler v. Tate,* 28 Utah 2d 355, 502 P.2d 565, 566 (1972) (denying intervention); *Christensen v. Peterson,* 25 Utah 2d 411, 483 P.2d 447, 448 (1971) (denying joinder).

In *Tucker v. McQuery,* 107 Ohio Misc.2d 38, 736 N.E.2d 574 (Com.Pl.1999), the tortfeasor was no longer a party to the action, so the UIM carrier was the only party in interest. *Id.* at 575 n. 1.

In *Lamz v. Geico General Insurance Co.,* 803 So.2d 593 (Fla.2001), the Court noted that "Geico [the UIM carrier] participated at trial as a party defendant, represented by its own attorney," *id.* at 594, and held that the "jury should be made aware of the precise identity of an uninsured or underinsured insurance carrier *if it is a party at trial.*" *Id.* at 595 (emphasis added). Thus, *Lamz,* like *King v. State Farm,* was factually akin to *Wheeler v. Creekmore,* but bore no factual resemblance to the case *sub judice.*

*Medina v. Peralta,* 724 So.2d 1188 (Fla. 1999), indeed held that the UM/UIM carrier must be joined as a party and identified specifically to the jury by its status as a UM or UIM carrier. *Id.* at 1190. However, that case turned on the fact that under Florida law, a UM/UIM carrier is a "necessary party" to the action. *Id.* (citing *Government Employees Ins. Co. v. Krawzak,* 675 So.2d 115, 118 n. 3 (Fla.1996), which held that a 1992 amendment of Fla. Stat. Ann. § 627.727(6) required that an action for UIM coverage be brought solely against the UIM insurer). Under Kentucky law, a UIM carrier is a real party in interest to an action against an underin-

sured motorist but is not a "necessary party" to such an action. *See* CR 19.01. While an action must be *prosecuted by* a real party in interest, CR 17.01, no provision requires that an action be *prosecuted against* or *defended by* a real party in interest—especially where that interest is identical at trial to that of another real party in interest who is providing an adequate defense. I would note in passing that the Court in *Medina v. Peralta* did not address what, if any, prejudice might flow to the tort defendant from identifying the plaintiff's UIM insurer as such at trial.

To summarize, no case cited in the majority opinion supports the majority's conclusion that a plaintiff has a right to inform the jury in a UIM case that the tort defendant is covered by a policy of liability insurance. All of our own precedents hold otherwise and, except for *Medina v. Peralta*, which turned on the language of a local statute, no case is found where a court has held that a UIM carrier that is potentially liable for an excess verdict *must* participate in the trial and *must* be identified to the jury.

## IV. BIFURCATION NOT ONLY PERMITTED, BUT REQUIRED.

Generally, whether to bifurcate issues for purposes of trial is within the sound discretion of the trial court. CR 42.02 ("If the court determines that separate trials will be in furtherance of convenience *or will avoid prejudice*, or will be conducive to expedition and economy, it shall order a separate trial of any ... separate issue ... or issues.") (Emphasis added.). That is especially true when the purpose of bifurcation or separation is to avoid the prejudice associated with the interjection of insurance. *Gray v. Bailey*, Ky., 299 S.W.2d 126 (1957). *See also Fid. & Cas. Co. of N.Y. v. Mills*, 319 F.2d 63 (1963) (interpreting Fed.R.Civ.P. 42(b)); *Tilley*, 40 F.Supp.2d at 815–16 (same). If that were the issue, I would conclude that Judge Jernigan did not abuse his discretion in bifurcating the negligence and damages issues from the insurance issue for purposes of trial.

However, in *Wittmer v. Jones*, Ky., 864 S.W.2d 885 (1993), we held that it was reversible error *not to bifurcate a direct action against an insurance company from the underlying negligence claim:*

> While we see no impediment to joinder of the claims in a single action, at trial the underlying negligence claim should first be adjudicated. Only then should the direct action against the insurer be presented. *Liability insurance should not be interjected needlessly into the trial of a negligence case.* Here failure to bifurcate was prejudicial error but for the fact that no actual prejudice resulted. If we were going to reverse this case for a new trial, we would order bifurcation.

*Id.* at 891 (emphasis added).[3] *Wittmer* was a direct action against an insurer claiming a violation of the Unfair Claims Settlement Practices Act. KRS 304.12–230. The case *sub judice* is a direct action against an insurer on a contractual obligation. The prejudice to the tort defendant is the same. Absent bifurcation, the jury will be informed that the tort defendant is insured by a policy of liability

---

**3.** In support of this holding, Justice Leibson cited his own dissenting opinion in *Federal Kemper Insurance Co. v. Hornback*, Ky., 711 S.W.2d 844, 847 (1986), incorporated by reference in *Curry v. Fireman's Fund Insurance Co.*, Ky., 784 S.W.2d 176, 178 (1989), in which he noted that "[t]he trial court elected to bifurcate the trial," 711 S.W.2d at 847 and "[a] bifurcated procedure was the proper way to try the present case." *Id.* at 849. Coincidentally, the author of this opinion was the trial judge in *Federal Kemper*.

insurance. The prejudice flowing from that knowledge was exemplified when the jury inquired of the trial judge whether the verdict would be paid by insurance or by Ms. Cobb, obviously indicating that the amount of the verdict would depend upon who would be required to pay it.

Under *Wittmer v. Jones*, Judge Jernigan was required to bifurcate the contractual issue from the underlying negligence case. Under CR 42.02, he at least did not abuse his discretion in doing so. If Indiana had asserted its right to participate and defend against Earle's claim in its own name, he would have been required to balance that right against the prejudice to Cobb from the jury's knowledge that she was covered by a policy of liability insurance. Here, the only person asserting a right to prejudice the jury and poison the verdict is Earle. Remarkably, the majority of this Court has concluded that she has an absolute right to do so.

Accordingly, I dissent.

JOHNSTONE, J., joins this dissenting opinion.