Earl WILLIAMSON, Appellant,

v.

Cynthia SCHNEIDER, M.D.; and Proudfoot & Associates, P.S.C., d/b/a Cave Run Clinic, Appellees.

No. 2004–CA–001704–MR.

Court of Appeals of Kentucky.

March 10, 2006.

Rehearing Denied May 3, 2006.

Discretionary Review Denied by Supreme Court Nov. 15, 2006.

Joe C. Savage, Kris D. Mullins, Lexington, KY, for appellant.

Clayton L. Robinson, Lynn Rikhoff Kolokowsky, Tonya Conner Rager, Lexington, KY, for appellees.

Before COMBS, Chief Judge; JOHNSON and McANULTY, Judges.

*OPINION*

JOHNSON, Judge.

Earl Williamson has appealed from the trial verdict and judgment entered by the Rowan Circuit Court on August 10, 2004, dismissing his complaint against the appellees, Cynthia Schneider M.D. and Proudfoot & Associates, P.S.C. d/b/a Cave Run Clinic,[1] after a jury found that Dr. Schneider was not negligent in treating Williamson. Having concluded that the trial court erred by not allowing Williamson to inform the jury that Cave Run Clinic was a party defendant in the case, we reverse and remand for a new trial.

On September 5, 2001, Williamson injured his right wrist while working for Whiting Manufacturing, a manufacturer of bedding comforters. Williamson was unloading a truck when he fell from a cart onto a forklift and landed on his right hand and wrist. Williamson was taken to the company's first-aid room and his wrist was placed in a metal splint and an Ace bandage. On that same day, Williamson went to the emergency room at Morgan County ARH Hospital, where x-rays were taken of his wrist. On September 11, 2001, he saw his family physician, Dr. Charles Hardin, who reviewed the emergency room x-rays and opined that Williamson might have a wrist fracture as the result of his fall. Dr. Hardin referred Williamson to Dr. Schneider, a general orthopedic physician and Cave Run Clinic.

On September 18, 2001, Williamson saw Dr. Schneider, who reviewed the emergency room x-rays, diagnosed a fractured wrist, and scheduled Williamson to return on October 2, 2001, when she took additional x-rays and put Williamson's wrist in a cast. On October 17, 2001, Williamson

---

1. There is no dispute that during all times mentioned Dr. Schneider was an employee of Cave Run Clinic; and for the time she was involved in the care and treatment of Williamson, she was acting within the scope of her employment.

returned to Dr. Schneider, still complaining with pain in his wrist. Dr. Schneider removed Williamson's cast and took more x-rays. Williamson's final visit to Dr. Schneider was on November 14, 2001, at which time he was still complaining of pain in his wrist. Dr. Schneider then ordered physical therapy and referred Williamson to Dr. Jeffrey Lawton, an orthopedic specialist at the University of Kentucky Medical Center.

On November 30, 2001, 12 weeks after his injury, Williamson went to see Dr. Lawton. Dr. Lawton reviewed the emergency room x-rays[2] and diagnosed Williamson with a torn ligament in his wrist and determined that he was not able to perform a primary repair of the ligament, but rather recommended conservative therapy. Dr. Lawton saw Williamson again on May 31, 2002. Subsequently, Dr. Lawton left the practice at the UK Medical Center and Dr. Constantine Charoglu became Williamson's treating physician.

Dr. Charoglu first saw Williamson on June 24, 2002, and determined that, due to the passage of time and significant worsening of the right wrist, he could only operate on it by doing a "salvage" procedure in which an entire row of bones of the wrist had to be removed, leaving Williamson permanently impaired. He further stated that surgery should have been performed two to three weeks after Williamson's injury. After Williamson received a second opinion, Dr. Charoglu performed surgery on Williamson's wrist in October 2002.

Williamson filed suit against Dr. Schneider and Cave Run Clinic on August 21, 2002, claiming that both were negligent in their care and treatment of him; and that as a result of failing to diagnose and to treat a torn ligament, he suffered severe and permanent injuries to his right wrist. Dr. Schneider and Cave Run Clinic, represented by the same counsel, filed an answer on September 4, 2002, denying the allegations.

On July 7, 2004, Dr. Schneider and Cave Run Clinic filed a motion *in limine* requesting the trial court to prohibit any identification or reference to Cave Run Clinic at trial because there was no allegation of its independent liability. The motion argued that while Cave Run Clinic had been named as a defendant, it could only be held vicariously liable for Dr. Schneider's negligence under the doctrine of *respondeat superior*.[3] Cave Run Clinic argued that its identity as a party defendant was irrelevant[4] and could create undue prejudice.

On July 13, 2004, Williamson responded to the motion, claiming that if the trial court did not allow him to identify Cave Run Clinic as a party defendant, the jury would be misled because it would be given incomplete information and it would be allowed to speculate as to who would ultimately be liable to satisfy any judgment.

---

2. For some reason, the x-rays taken at Cave Run Clinic were not available for Dr. Lawton's review.

3. *See* Black's Law Dictionary 934, (8th Ed.2004) (defining *vicarious liability* as "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties"); *see also* Black's Law Dictionary 1338 (defining *respondeat superior* as "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency").

4. *See* Kentucky Rules of Evidence (KRE) 401 (stating that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Dr. Schneider and Cave Run Clinic replied that any judgment would be covered by a professional liability policy regardless of which defendant was found liable and, like a defendant's financial status or wealth, Cave Run Clinic's identity was not relevant.

On July 16, 2004, the trial court held a pretrial conference and heard arguments on this issue. The trial court informed the parties that it needed more time to study the issue and would make a ruling prior to trial. On July 22, 2004, the trial court entered an order regarding some of the parties' pretrial motions but did not rule on this specific motion *in limine*. However, the order did indicate that *voir dire* could include whether jurors were patients of Cave Run Clinic and "whether they believe or feel that Cave Run Clinic will be adversely affected by a judgment against Dr. Schneider."

A jury trial was held from July 26, 2004, through July 28, 2004. On the morning of July 26, 2004, prior to the start of the trial, a hearing was held in the trial court's chambers and this issue was again brought before the trial court for clarification. Williamson argued that in order for the jury selection process to be meaningful, it was necessary for the jury to know that there were two defendants in the case and that a judgment against Dr. Schneider was also a judgment against Cave Run Clinic. However, the trial court determined that the jury would not be told that Cave Run Clinic was a defendant to the action. The trial court specifically stated that it did not want the jury to think that there were "two pools of money." [5]

During *voir dire*, Williamson's counsel was allowed to ask the potential jurors whether they were patients of Cave Run Clinic, and it was disclosed that Dr. Schneider was an employee of Cave Run Clinic. However, Williamson's counsel chose not to question each individual juror as to his or her relationship with Cave Run Clinic.[6] The jury found Dr. Schneider was not negligent, and the trial court on August 10, 2004, entered a trial verdict and judgment dismissing Williamson's claims against Dr. Schneider and Cave Run Clinic. This appeal followed.

■ Williamson argues the trial court erred as a matter of law by prohibiting the jury from hearing that both Dr. Schneider and Cave Run Clinic were defendants. Williamson claims the ruling prohibited the parties from conducting a reasonable and comprehensive *voir dire* of the jury

---

5. More specifically the trial court stated:
   I don't want the jury to think there are two pockets when, realistically, there's only one, and—and—I think all this—stuff about trying to hide insurance from the jury, the jury is going to know that Dr. Schneider has malpractice insurance. I don't know what doctor doesn't have malpractice insurance. And I think to get into—get into the fact that there—there's another named defendant leaves the jury to perceive that there are two pockets instead of one, and I—I think that—that you all should have every right to voir dire them with—with how they feel about Cave Run Clinic and whether they think—feel like it is going to adversely affect the Cave Run Clinic. I think what we're actually talking about is whether Dr. Schneider was negligent and if she—if they do find that she was negligent, then the sum of money that they determine is just one sum of money, not a sum of money against Dr. Schneider and not a separate sum of money against the Cave Run Clinic. I think that—that to get into that is confusing to them and they think that there's two—two pools of money.

6. Williamson's counsel stated during *voir dire:* "Rather than take each one individually, I knew we'd get into a lot because that's just the way it is here in Morehead. Can you all lay aside whatever happened in the past with respect to you or your family being at [ ] Cave Run Clinic?"

panel and that there is no legal basis for the ruling. Having concluded that it was error for the trial court to preclude the jury from knowing that Cave Run Clinic was a party defendant to the action, we reverse the trial court's judgment and remand for a new trial.[7]

The trial court's grant of the appellees' motion *in limine* to withhold the identity of Cave Run Clinic as a defendant in the case was not based on any legal precedent in this Commonwealth or any other jurisdiction. As our Supreme Court noted in the recent case of *Earle v. Cobb*,[8] Kentucky law clearly states that all defendants to a lawsuit should be disclosed at trial. "CR 17.01 provides, in part, 'Every action shall be prosecuted in the name of the real party in interest.... Nothing herein, however, shall abrogate or take away an individual's right to sue" [citations omitted].[9]

The crux of the appellees' argument in support of their motion *in limine* was that it would be irrelevant and prejudicial for the jury to know that Cave Run Clinic was a defendant in the case. However, there are numerous cases in this Commonwealth where the employer was named as a party defendant based on the vicarious liability doctrine of *respondeat superior*, including when the employer-employee relationship was between a hospital or medical clinic and a doctor.[10] While the trial court accepted the appellees' novel argument as justified, this Court views it as unsubstantiated and meritless. We find unpersua-

sive the appellees' argument that this employee-employer relationship is equivalent to the relationship of a tortfeasor and its liability insurance carrier.

▮▮▮ In *Earle*, our Supreme Court reversed both the trial court and this Court and remanded the case for a new trial because the case was tried without the identity of all the parties being disclosed. The Supreme Court held that where the underinsured motorist insurance carrier "chose to retain its subrogation rights by substitution of its payment for that of the liability insurance carrier" and the UIM carrier was "named as a party by virtue of its contract," the insurance company should have been identified as a party.[11] When the action was filed in the trial court, the UIM carrier was named a party defendant and was allowed to participate in all pre-trial proceedings and discovery. In the case before us, Cave Run Clinic was similarly allowed to participate prior to trial; and because it had the same counsel as Dr. Schneider, Cave Run Clinic's counsel actually participated during the trial. The Court in *Earle* found that presenting the case as if the only parties were the plaintiff and the tortfeasor was "fundamentally misleading to the jury and it deprives a plaintiff of the right to try her case against the party she chooses."[12] "A party who undertakes defense of a case and avoids default is a party for all purposes."[13] "One cannot be a party for pur-

---

7. Williamson's additional claims that the trial court erred by failing to strike certain jurors for cause are moot in light of our reversal on the issue related to the non-disclosure of Cave Run Clinic as a party.

8. 156 S.W.3d 257, 259 (Ky.2004).

9. *Earle*, 156 S.W.3d at 259.

10. *McFall v. Peace, Inc.*, 15 S.W.3d 724 (Ky. 2000); *Baylis v. Lourdes Hospital, Inc.*, 805 S.W.2d 122 (Ky.1991). *See also* John D. Hod-

son, J.D., Annotation, *Liability of Hospital or Sanitarium for Negligence of Physician or Surgeon*, 51 A.L.R.4th 235 (1987).

11. *Earle*, 156 S.W.3d at 258.

12. *Id.* at 259.

13. *Earle*, 156 S.W.3d at 259 n. 3 (citing *Stuart v. Richardson*, 407 S.W.2d 716 (Ky.1966) ("holding real party in interest is one entitled to the benefits of action upon the successful termination thereof")).

poses of motion and discovery, and later strategically conceal its identity at trial."[14] However, this non-disclosure of party identity is exactly what occurred in the case before us.

The Supreme Court in *Earle* acknowledged that "[f]or sound policy reasons, evidence of liability insurance to show culpability is excluded. However, where a direct contractual relationship exists between a plaintiff and a defendant . . . no such policy is warranted."[15] "The rule excluding any mention of insurance is founded on the premises that it is irrelevant to the issue of whether insureds tend to be less careful than uninsureds and, more importantly, that knowledge of insurance coverage might cause the jury to impose liability without regard to fault" [citations omitted].[16] This policy clearly does not support the exclusion of a medical clinic as an identified party in a medical negligence action of one of its doctors/employees. Rather, this employer-employee relationship more akin to the underinsured motorist carrier-tortfeasor relationship in *Earle.* Both relationships are "direct contractual relationship[s] . . . ."[17] We agree with the following reasoning by the Supreme Court in *Earle:*

> In the instant matter, the defendant, a corporation, has no personal right of privacy. Further, the unsubstantiated belief by State Farm that its disclosure as the defendant would adversely affect the jury's verdict furnishes insufficient

justification for withholding from the jury, and from the general public, State Farm's identity as the defendant at a public trial. . . . Indeed, State Farm's position here is no different from that of any insurer that is sued directly for breach of its policy or from that of any apparently "deep pocket" corporation. . . . We hold that the circuit court abused its discretion in imposing this partial blackout on public information [citations omitted].[18]

Williamson, as did the plaintiff in *Earle,* brought a direct action against the tortfeasor based on negligence and the claims against the second defendant were based on its contractual undertaking; *i.e.,* its employment relationship with Dr. Schneider. We conclude, as the Supreme Court did in *Earle,* that failure to name a contractually liable defendant at trial leaves the jury to " 'speculate about the exact role of the [defendant] in the lawsuit, perpetuating the "charades in trials" ' " [citations omitted].[19] "Precedent, parity, and fairness demand that this Court put an end to charades and legal fictions . . . [and] failure to identify to the jury a named party defendant at trial . . . is . . . reversible error."[20]

The Supreme Court in *Earle* found persuasive support for its holding from *King,* where the plaintiff's underinsured motorist carrier made the same arguments Cave Run Clinic made in the case before us.[21] The Court in *King* stated, "[f]urther, the

14. *Id.* (citing *King v. State Farm Mutual Auto. Insurance Co.,* 157 Md.App. 287, 850 A.2d 428, 434–36 (2004)).

15. *Earle,* 156 S.W.3d at 259.

16. *White v. Piles,* 589 S.W.2d 220, 222 (Ky. App.1979).

17. *Earle,* 156 S.W.3d at 259.

18. *Id.* at 260.

19. *Id.* at 261.

20. *Earle,* 156 S.W.3d at 261.

21. *King,* 850 A.2d at 430 (noting that State Farm argued in its motion *in limine* that it was "inherently prejudicial" to discuss the insurance company and that there was no reason to do so.)

unsubstantiated belief by State Farm that its disclosure as the defendant would adversely affect the jury's verdict furnishes insufficient justification for withholding from the jury, and from the general public, State Farm's identity as the defendant at a public trial." [22] This same logic is supported by *Wheeler v. Creekmore*,[23] where the former Court of Appeals stated, "[s]ince the company was a party and was actively represented by counsel we think the jury was entitled to know that fact and to have the company's counsel identified."

Based on the foregoing reasons, we conclude that the trial court erred by refusing to allow Williamson to identify Cave Run Clinic as a party defendant, and we reverse and remand for a new trial.

McANULTY, Judge, concurs.

COMBS, Chief Judge, concurs and files separate opinion.

COMBS, Chief Judge, concurring.

As the majority opinion notes at p. 7, the dispositive case governing this matter is *Earle v. Cobb*, 156 S.W.3d 257 (Ky.2004), a *recent* Supreme Court case. At the time of the judgment entered in the case before us (August 10, 2004), *Earle* had not yet been rendered by the Supreme Court (*i.e.*, December of 2004). Therefore, the error is not quite as clear and obvious as the majority opinion would intimate. The *Earle* precedent was established subsequent to the decision in this case and was not available to provide guidance or assistance to the trial court.